## No. 1239.

### THE STATE OF LOUISIANA vs. A. A. GOODWIN.

37 713
48 306
37 713
111 937

In a prosecution for knowingly and maliciously sending a letter to another threatening to accuse him of a crime, under Act 64 of 1884, the use of the words "willfully, maliciously and feloniously" is the certain and entire equivalent of the words "knowingly add maliciously" employed in the statute.

An admission, made to avoid a continuance, that the prosecuting witness had made frequent threats against the accused, does not debar the State from proving on the trial the times and circumstances under which such threats were made.

Proof of the truth of the charges threatened to be made is not *per se* a justification under the statute, though such proof. in connection with other evidence tending to rebut the malicious intent, might under some circumstances be admissible.

This offense is entirely different from libel, and neither the letter nor the reason of the constitutional provision permitting the truth of the libel to be given in evidence has any application here.

The only qualification of the crime is that the act denounced was done "knowingly and maliciously," i. e , with malicious intent; and while charging that the malice must be established, the judge did not err in charging that the particular character of the malicious motive was of no consequence.

It is no obstacle to a conviction under Act 64 that the evidence might have supported the graver offense denounced by Act 63.

The statute does not violate the constitutional guaranty of liberty of speech.

APPEAL from the Twelfth District Court, Parish of Rapides. Blackman, J.

John C. Wickliffe and John C. Ogden, District Attorneys, for the State, Appellee:

R. P. Hunter and Jas. Andrews for Defendant and Appellant.

The opinion of the Court was delivered by

FENNER, J. The indictment charges that the defendant "did willfully, maliciously and feloniously write, send and cause to be delivered to one William McCuen a letter threatening to accuse said McCuen of the crimes of arson, embezzlement and larceny, etc."

A motion to quash was made, based on the grounds: "1st. That th indictment is so vague, indefinite and defective for duplicity that it is impossible to tell what is charged against him. 2d. That said indictment does not charge any offense known to the law of Louisiana; that there are two statutes of a similar nature, but the offense herein is not laid under either, and it is impossible to tell under which the prosecution is brought. 3d. That the distinction between the two statutes is the intent to extort money or the absence of such intent, and no intent is charged."

We think the motion was properly overruled. The two statutes referred to are the Acts Nos. 63 and 64 of 1884, already referred to in the case of Peters, just decided. There is not the slightest obscurity as to the act on which the indictment is based. The absence of any charge of intent to extort removes it conclusively from the operation of Act 63 and confines it to Act 64. The latter act affixes no intent to the offense, except that it be done "knowingly and maliciously." The only question deserving attention under the motion is, whether the terms "willfully, maliciously and feloniously" are a sufficient equivalent for the words "knowingly and maliciously" used in the statute. It is not essential that statutory offenses should be charged in the precise words of the statute, provided terms of certain and equivalent import are used. State vs. Stiles, 5 Ann. 324; State vs. Pratt, 10 Ann. 191; State vs. Hendry, 10 Ann. 207; State vs. Butman, 15 Ann. 166.

We can conceive of no possible significance of the words "knowingly and maliciously" which is not conveyed by the words "willfully, maliciously and feloniously."

State vs. Goodwin.

2d. Accused made a motion for continuance on the ground of an absent witness, by whom he swore he expected to prove that the prosecuting witness, McCuen, had made frequent threats that he would send accused to the penitentiary, and "that this is a false, wicked and malicious prosecution, instigated by malice and spite against affiant." The State admitted the threats, but refused to admit the part in quotations, on the ground that it would be only an opinion of the witness. The judge did not err in accepting the admission as tendered, and in refusing the continuance.

We may here dispose of a later exception connected with this matter taken to the ruling of the judge permitting McCuen to prove the time and circumstances under which the threats above admitted were made. We can perceive no inconsistency between this evidence and the admission, and no error in the ruling.

3d. Bill No. 3, taken to all the evidence, on the ground that the indictment charges no intent and is not sufficient to support any proof, falls before the same reasons on which the motion to quash was overruled.

4th. Bill No. 4 covers an objection to a statement by McCuen that the threatening letter produced was written by accused "to the best of his knowledge and belief," he having seen him write once, on the ground that it was only the opinion of witness. The objection has no merit; and goes only to the effect of the testimony.

5th. The ruling excluding questions as to the contents of a letter without showing that the letter itself had been lost or mislaid was clearly correct.

6th. The objection to the reception in evidence of the threatening letter referred to in the indictment, on the ground that it tended to show an intention to extort money and to prove the offense established by Act 63, had no force. If it was "knowingly and maliciously sent," and was a threatening letter within the terms of the statute, it would support the lesser offense under Act 64, whether or not it was designed to extort.

7th. The exclusion of testimony offered to prove the truth of the charges threatened to be made in the letter was not error, though, perhaps, the reasons given by the judge, as they appear on the face of the bill, are expressed too broadly. We are not prepared to say that in connection with, and as an element of, evidence going to show proper motives for the communication, and to rebut malice, the truth, or even an honest belief in the truth, of the charges might not, under some circumstances, be receivable in evidence. For instance, suppose

the motive of the party sending a letter threatening to accuse another of a crime of which he believed him to be guilty had been to give the latter an opportunity of explaining his conduct and showing his innocence, if possible, before taking action, such facts would obviously rebut the imputation of malice, which is an essential element of the offense. But where, as in this case, the truth was offered as, of itself and by itself, a justification, it was properly rejected.

The qualifications contained in the statute are "knowingly and maliciously," not *falsely* or *untruthfully*, and the malicious intent may be as clear in threatening to accuse another of a crime which he *did* commit as of one which he did *not* commit. And this is apparent from the context of the statute, which extends the denunciation to threats to accuse another of any "*fault, misfortune, infirmity* or *failing.*" Surely the fact that the *misfortunes* or *infirmities* existed would not justify the letter or rebut the malice. The mandate of the law and the constitution, that in matters of libel the truth shall be received in evidence, has no application to this case, which does not partake of the character of libel or even of slander, an essential element of which is *publication*, which is not contemplated here. And the reason of the requirement is equally inapplicable. It may serve as some protection to society to let the world know that another is a criminal or an unworthy person, if that be true; but what good purpose is served by malicious and vindictive threats addressed privately to the criminal, and serving only to annoy and alarm him, without the remotest benefit to any other person?

The evidence was properly rejected.

8th. The next exception is to the following charge of the judge : "If the jury find from the evidence that the accused sent the letter as charged in the indictment—that is, if he *knowingly* and *maliciously* sent the letter—and that it threatens to accuse McCuen of a crime, it makes no difference with what intent it was done, whether for extorting money or other valuable thing or for the purpose of defaming, it being necessary for the State to establish that it was knowingly and maliciously done."

Counsel for accused contends that this charge entirely eliminates the question of *intent* from the consideration of the jury, and leaves nothing to be determined but the bare fact of sending the threatening letter. The language is not susceptible of such interpretation. On the contrary, it could not more emphatically express the requirement that the sending must be *malicious*, i. e., with malicious intent. If mali-

cious, it correctly holds that the particular character of the malicious motive is of no consequence. And such is the law.

9th. The last exception is to the refusal of the judge to charge the jury as follows: "If the jury finds that the intent was to extort money and not to maliciously injure the character and reputation of McCuen, then they ought to acquit the accused; that the prisoner is being tried under an indictment found under Act No. 64 of 1884, and they cannot find the prisoner guilty under the state of facts denounced by Act No. 63 of said session."

The judge did not err in such refusal. The crime of "knowingly and maliciously sending a letter threatening to accuse another of a crime" may certainly coexist with an additional intention of extorting money, and the objection is robbed of all possible force when it is considered that the latter intention adds to the penalty of the offense.

Some general remarks were made to the effect that the statute, as thus construed, violates the constitutional guaranty of liberty of speech.

A bare reference to the judicious commentary of Mr. Cooley on this subject, wherein he expounds the meaning and history of these constitutional provisions, with copious reference to authorities, will show that this contention has not the slightest foundation. Cooley on Const'l Lim., chap. 12.

Threatening communications, with the intention to extort money, have been common subjects of criminal legislation both in England and in the States of this Union. 2 Archbold Cr. Pr. and Pl., p. 1060 and notes.

The legislature of this State adopted similar legislation in the Act 63 of 1884. But recognizing the existence of an equally cowardly and reprehensible practice on the part of evil-disposed persons of vexing, annoying and alarming others against whom their malice had been excited, by sending anonymous or other communications threatening to expose them to public criticism by accusing them, generally falsely, of crimes or of humiliating infirmities or misfortunes, the legislature wisely extended the provisions of its criminal law so as to prevent or punish such acts.

It is a libel upon the noble privilege of free speech, guaranteed by our constitution, to say that it embraces or protects such despicable practices. We make this remark, of course, without reference to the facts of this particular case, with which we have nothing to do.

Judgment affirmed.