THE STATE, *Appellant*, v. McCABE *et al.*

Division Two, October 7, 1896.

1. **Criminal Law:** SENDING THREATENING LETTERS TO A DEBTOR: STATUTE. A person sending letters to a debtor threatening to publish him among his neighbors as a bad debtor unless the debt is paid is liable under Revised Statutes, 1889, section 3782, providing that any person delivering any letter, etc., threatening to do injury to the "credit or reputation" of another, shall be guilty of a misdemeanor.

2. **Criminal Practice:** SENDING THREATENING LETTERS TO A DEBTOR: STATUTE: INFORMATION. An information charging a threat by defendant to publish the name of the debtor in the "Claimant Agency" as a bad debtor is sufficient without alleging defendant's connection with the paper or its character.

3. **Criminal Law:** SENDING THREATENING LETTERS TO A DEBTOR: STATUTE: CONSTITUTION. Revised Statutes, 1889, section 3782, prohibiting creditors from threatening to injure the credit or reputation of a debtor by publishing his name as a bad debtor unless the debt is paid is not unconstitutional as depriving the creditors of the protection of their property rights guaranteed to them by the bill of rights.

4. ———: ———: ———: ———.    Nor is such statute unconstitutional as restricting the freedom of speech.

*Appeal from St. Louis Court of Criminal Correction.* HON. DAVID MURPHY, Judge.

REVERSED AND REMANDED.

*T. E. Mulvihill,* prosecuting attorney, and *J. L. Hopkins* and *Howe & Howe* for the state.

(1) The information is drawn under section 3782, Revised Statutes, 1889, and is in proper and approved form.    The statute was amended since the *Barr & Widen* decision, and now includes credit and reputa-

tion. Kelley's Crim. Practice, sec. 919; R. S. 1889, sec. 3782; *State v. Barr & Widen*, 28 Mo. App. 84. The information charges an offense under this statute. That the letters, etc., threaten injury to "credit and reputation" there can be no question. (2) It is clear that the threat charged was made for the purpose of extorting money through fear that could not be collected by legal process. But if the threat were even ambiguous, the state is entitled to introduce parol evidence to explain its contents or meaning and whether it contained the alleged threat as charged is a question for the jury. Kelley's Criminal Practice, sec. 919; *State v. Linthicum*, 68 Mo. 66; *People v. Braman*, 30 Mich. 463; *State v. Barr & Widen*, 28 Mo. App. 84.

*Willis H. Clark* for respondents.

(1) The action of the lower court in quashing the information was correct. Penal statutes are strictly construed. *State v. McLain*, 49 Mo. App. 398; *State v. McCance*, 110 Mo. 398; *State v. Bryant*, 90 Mo. 534. (2) The holder of a valid unpaid claim has the legal right, in person or by agent, to make public or private demand of payment and advertisement of the claim for sale, and the legal right to notify the debtor of intention so to do. *U. S. v. Elliott*, 51 Fed. Rep. 807; *Charless v. Rankin*, 22 Mo. 566; *Victor Mining Co. v. Mining Co.*, 50 Mo. App. 525; Cooley on Torts [2 Ed.], 830. (3) The letters set out in the information show that "The Claimant Agency" held for a creditor a claim against Post, the existence and validity of which claim are not negatived in the information and is, therefore, confessed. *State v. Hammond*, 80 Ind. 80; *Embry v. Com.*, 79 Ky. 439. The conviction of defendant would be an infringement of the provisions of the constitution guaranteeing the protection of

life, liberty, and property.    See *State v. Julow*, 120 Mo. 163.

GANTT, P. J.—This is an appeal by the state from a judgment of the St. Louis court of criminal correction, quashing an information against the respondents.

On January 17, 1896, an information was filed in said court charging defendants with the offense of sending a threatening letter. It was quashed on motion of defendants. On January 28, an amended information was filed by the assistant prosecuting attorney, in words and figures as follows:

"State of Missouri, Plaintiff,           In the St.
              *v.*                       Louis court
Alexander McCabe, Henry S. McCabe,       of criminal
    and H. M. Tileston, Defendants.      correction.

"Richard M. Johnson, assistant prosecuting attorney of the St. Louis court of criminal correction, now here in court on behalf of the state of Missouri amended information makes as follows:

"That Alexander McCabe, Henry S. McCabe, and H. M. Tileston in the city of St. Louis, aforesaid, on the eighth day of January, 1896, unlawfully, knowingly, and maliciously, did send and deliver to one James Post by United States mail inclosed in one envelope certain letters, writings, printings, circulars, and cards with the name and signature of 'The Claimant Agency' subscribed thereto, directed to the said James Post by the name and description of Mr. James Post signed on the back thereof, then and there and therein threatening to injure the credit and reputation of the said James Post, which said letters, writings, printings, circulars, and cards were and are in words and figures as follows, that is to say—

" 'THE CLAIMANT AGENCY (INCORPORATED).

" 'Room 120, Laclede Building, St. Louis, Mo., 1–18, 1896.

" 'We are authorized to publish in our "For Sale" columns, the claim we hold against you. You have ignored it so long, the patience of your creditor has become exhausted.

" 'The "*Claimant*" will contain the same in its next issue. We must also place every month in the houses opposite and adjacent to your residence, fifty of the inclosed circulars directed to your address.

" 'If you are unable to settle in full, a payment will stop proceeding against you, as well as publication of the debt.          Respectfully,

" 'THE CLAIMANT AGENCY.

" 'Make settlement direct with this office.'

" 'The claim of $———we hold against you is yet unpaid. "Honesty is the best policy." Call and make arrangements to settle the debt.

" 'Complimentary. The Claimant Agency. Publishers, Room 120, Laclede Building, St. Louis.

" 'Fill out the coupon and return to us with list of accounts. We will offer for sale Ten Claims Complimentary and mail copy of "*The Claimant*" containing same to each debtor. Before publishing we will endeavor to obtain some money for you on the accounts.'

" 'THE CLAIMANT AGENCY.

" 'Collection Department. Our regular membership fee is $10.00 per year, including subscription to "*The Claimant.*" Claims "For Sale" can be inserted therein at the rate of 25 cents per name, per month, by nonmembers.'

" 'FOR SALE, the following judgments: Against Leon D. Boucher, 1049 DeHodiamont avenue, $24.88 for unpaid grocery bill. Against George W. Ferguson,

5036 Bell avenue, $64.25, for unpaid grocery bill. Against John J. McCann, 1710 Chestnut street, $29.95, for unpaid grocery bill. The Claimant Agency (incorporated), Publishers and Collectors, Room 120, Laclede Building, St. Louis, Mo.'

"Which said letters, writings, printings, circulars, and cards were sent out and delivered through the United States mails to the said James Post by said defendants, unlawfully, knowingly, and maliciously for the purpose of and therein threatening to injure the credit and reputation of the said James Post, by bringing him into disrespect and disrepute with his friends, neighbors, and associates, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state.

"RICHARD M. JOHNSON,

"Asst. Pros. Atty. for St. Louis Court of Criminal Correction."

Subscribed and sworn to by James Post, January 28, 1896, before the clerk of said court.

On the same day the defendants filed their motion to quash, in the following words:

"1.   Said information is not sufficient in law.

"2.   Said information is not sufficient in substance.

"3.   Said information is vague, indefinite, and uncertain.

"4.   Several distinct charges against these defendants are alleged in said information in one count.

"5.   The acts charged against these defendants in said information are such as these defendants have an inherent right to do, which right is guaranteed to them, and each of them, under and by the constitution of the state of Missouri, and under and by the constitution of the United States of America.

"6. Said information fails to inform these defendants with certainty as to the nature and cause of the accusation against them, therein violating the provisions of the constitution of the state of Missouri, and the constitution of the United States of America.

"7. Said information is in violation of the provisions of the constitution of the state of Missouri, and of the United States of America with reference to the deprivation of life, liberty, and property without due process of law.

"8. Said information affirmatively shows that neither of these defendants is guilty of any offense against the laws of the state of Missouri, such as is charged against them therein.

"9. Said information affirmatively shows that neither of these defendants is guilty of any offense against the laws of the state of Missouri.

"10. The names of all material witnesses are not indorsed upon said information."

This motion also was sustained, and the prosecuting attorney took all proper steps to have said ruling of the court reviewed in this court, on the ground that the decision of the cause involved the construction of the constitution of the United States and of this state. Constitution of Mo., art. 6, sec. 12.

The information was intended to charge an offense under section 3782, Revised Statutes, 1889, which provides that, "every person who shall knowingly send or deliver any letter, writing, printing, circular, or card, with or without a name subscribed thereto, or signed with a fictitious name, or any letter, mark, or device, *threatening* to accuse any person of a crime, or to kill, maim, or wound any person, or to do any injury to the person, property, *credit*, or *reputation* of another, though no money or property be demanded or extorted thereby, shall, on conviction, be adjudged guilty of a misde-

meanor." It will be observed that this section, which was numbered 1526, Revised Statutes, 1879, has been amended by inserting the words "credit or reputation."

The St. Louis court of appeals in *State v. Barr & Widen*, 28 Mo. App. 84, in 1887 held that the sending of a letter threatening to publish a person's name in a "dead-beat" book whereby his credit would be ruined, was not an offense under section 1526, Revised Statutes, 1879, because "credit and reputation" were not property within the meaning of the section as it then read.

It is obvious that the insertion of "credit and reputation" in the next revision after the promulgation of that decision was intended to cover threats of injury to the credit or reputation as well as to property or person.

The information sufficiently charges that the defendants sent a letter to the prosecuting witness which contained circulars and writings threatening to injure his credit among his neighbors and fully set out the means and the character of the agencies which would be adopted and employed to effectually destroy his credit and reputation, to wit, by placing every month in the houses opposite and adjacent to his residence fifty of the circulars inclosed, directed to his address.

The point made that there is no allegation as to what "The Claimant Agency" was, or how defendants were connected with it, is without force for the reason that it is wholly immaterial whether it is a corporation or a firm name, or wholly fictitious. The offense charged is that defendants sent these threatening circulars and writings. They are guilty in lending themselves to this scheme of destroying the credit and reputation of the prosecuting witness. They were fully

advised in the information of the nature and character of the offense with which they were charged.

They raise the question of the constitutionality of the law itself. They assert that conceding they did threaten to ruin the credit and reputation of the prosecuting witness as a business man they were guilty of no offense under the laws of this state, because they say they had a right to do so.

Let us examine this contention. Can it be maintained that the guaranty in the federal and state constitutions of life, liberty, and property justifies any citizen in threatening to destroy the credit or reputation of another citizen? If it can, then it amounts to this, that not only are the courts open to him to obtain a judgment for any sum due him and the process of the law is awarded him to enforce that judgment but in· addition thereto he has the right to threaten the publication of a criminal libel whereby he may destroy his debtor's credit and reputation. More than this, he may avoid the courts altogether, deprive his debtor of all just credits and set-offs, all lawful pleas in defense, and through fear of the ruin of his credit he may even collect an unjust debt or obtain an unconscionable advantage. The law will not countenance or tolerate this method of collecting debts.

The state has provided every needed remedy, both ordinary and extraordinary, to enforce the payment of all just debts through the agency of her courts of justice and among these remedies is not included the right to threaten to destroy credit and reputation. Such a course is well calculated to produce a breach of the peace. If once permitted and sanctioned by the courts it will soon degenerate into an intolerable and oppressive wrong. Unjust claims will be extorted from timid debtors. Honest and deserving men will be held up to scorn and published as dishonest merely because

they have not the means with which to meet their obligations.

The position of counsel that because a man is too poor or unable to meet all his obligations as soon as due that no wrong can come to him by publishing his inability to do so in the most offensive manner can not be countenanced by this court. It is alike unsound in law and morals. The law does not authorize the collection of even just debts by the malicious threatening to injure the debtor in his person, property, credit or reputation. To deny him the privilege of so doing in no sense deprives him of the protection of his property rights under the bill of rights or constitution.

Does it trench upon that other constitutional right securing freedom of speech, which guarantees "that every person shall be free to say, write or publish whatever he will on any subject being responsible for all abuse of that liberty?"

Judge COOLEY in his great work on Constitutional Limitations (6 Ed., page 518) says: "The constitutional liberty of speech and of the press as we understand it implies a right to freely utter and publish whatever the citizen may please and to be protected against any responsibility for so doing except so far as such publications from their blasphemy, obscenity, or scandalous character may be a public offense or as by their falsehood and malice they may injuriously affect the standing, reputation, or pecuniary interests of individuals."

The constitution grants no immunity from punishment for criminal libels.

Libel is defined by our law as follows. "A libel is the malicious defamation of a person made public by any printing, writing, sign, picture, representation, or effigy, tending to provoke him to wrath or expose him to public hatred, contempt, or ridicule, or to deprive him

of the benefits of public confidence and social inter-
course; any malicious defamation made public as afore-
said designed to blacken and villify the memory of one
who is dead, and tending to scandalize or provoke his
surviving relatives and friends."

As was said in *State v. Armstrong*, 106 Mo. 395:
"The evident purpose and design of the defendants and
the association they employed * * * was to publish
the prosecutor as a *bad* debtor, a *dishonest person* who
would not pay his honest debts and to degrade him in
the eyes of the public, and as such clearly libelous and
within the meaning of the statute."

The proposed mode of publishing the threatened
libel clearly indicates that it was actuated by malice.
There is nothing in the bill of rights which would
exonerate defendants from responsibility for such a
criminal libel if actually uttered and published nor to
shield them from the offense denounced against send-
ing a letter threatening to so libel him. The reason
why libelous publications are public offenses is their
direct tendency to provoke breaches of the public peace
by the injured parties, and their friends and families
to acts of revenge, and the same reason underlies
statutes against letters which threaten extortion by
means of libel. Such statutes do not infringe the con-
stitutional right of any law-abiding citizen.

Communications of this character with the inten-
tion of extorting money have been the common sub-
jects of legislation both in England and the states of
this union (2 Archbold, Crim. Prac. and Plead., p.
1060, and notes), and such laws have never been sup-
posed to be obnoxious to freedom of speech as under-
stood in our free institutions. On the contrary it is a
libel on the bill of rights which guarantees free speech
to assert that it was intended to protect any one in

such despicable practices. *State v. Goodwin*, 37 La. Ann. 713.

Without further elaboration we hold that the court of criminal correction erred in quashing the information and its judgment is reversed and the cause remanded. SHERWOOD and BURGESS, JJ., concur.