## E. M. DUNN v. THE STATE.

### No. 2032. Decided May 1, 1901.

**1.—White-Capping—Plea of Former Conviction—Practice.**

On a trial for white-capping, defendant pleaded that he had been previously convicted of sending a white-capping letter of the same tenor as the one declared on in this indictment, and mailed to another party at one and the same time as was the one involved in this prosecution. Held, the court correctly instructed the jury to disregard said plea. The mere fact that two offenses are committed contemporaneously, does not make them any the less two distinct offenses.

**2.—White-Capping—What Is—Construction of Statute.**

The Act of 1899, (Twenty-sixth Legislature, page 215) Penal Code, article 314a, denouncing white-capping as an offense, is as follows, viz: "Any person who shall post any notice or make any threats or signs, or skull or crossbones, or shall by any other method post any character or style of notice or threat to do personal violence or injury to property, on or near the premises of another, or who shall cause the same to be sent with the intention of interfering in any way with the right of such person to occupy said premises or to follow any ligitimate occupation, calling, or profession, or with the intention of causing such person to abandon such premises or precincts or county in which such person may reside, shall be deemed guilty of the offense of white-capping, and upon conviction therefor shall be punished by confinement in the penitentiary for any period of time not less than two years nor more than five years." Held, under the statute, various things constitute the offense, as, for instance, it is an offense to post an annoymous notice, or make any threats or signs or skull and crossbones implying a threat to do personal violence to any one or injury to his property, or to post or send an annoymous sign or notice with the intention of interfering with one's right to pursue his occupation, or to occupy his premises, etc. Henderson, J., dissenting, and holds, that it requires both of the above to constitute the completed offense.

**3.—Same—As to Sufficiency of Notice.**

Under provisions of the last clause of the act, to wit, No. 4, as set out in the foregoing paragraph, it is not necessary that the notice shall contain a threat to do personal violence; it is only required that the notice or sign is sent with the intention to do the things, or either of them, enumerated in said last clause. Henderson, J., dissenting.

**4.—Same—Indictment.**

See opinion for an indictment for white-capping, brought under the last clause of the statute, which is held sufficient to charge the offense. Henderson, J., dissenting.

**5.—Same—Innuendo Averments.**

Where the signs and symbols and language used in a white-capping notice or letter convey to the party to whom it is sent, without ambiguity, a notification that he will be hanged on a certain day, and it is alleged that they were sent for the purpose of frightening him, thereby interfering with his following, his

legitimate calling, occupation, etc.,—no further innuendo averments are required in the indictment to explain such signs, symbols and language. Henderson, J., dissenting.

**6.—Same—Evidence.**

Where a white-capping notice or letter is inclosed in an envelope addressed to Mr. Jim Owes, and it is alleged in the indictment that the defendant did unlawfully, knowingly, and willfully cause said notice, threats, and signs to be sent to Jim Owens, this is tantamount to an innuendo averment to the effect, that when defendant wrote Jim Owes, he intended to write Jim Owens; and the indictment is sufficient in this regard, and the court did not err in permitting the envelope and letter to be introduced in evidence, nor in permitting Jim Owens to testify to his having received said letter.

**7.—Witness.**

Where a witness on his examination states two facts, the accuracy of both, or either of which, is questioned, it is permissible for such witness to state which fact he is most certain of.

**8.—Circumstantial Evidence—Charge of Court.**

Where there is positive evidence as to the mailing of the white-capping letters by defendant, it is not incumbent on the court to charge upon the law of circumstantial evidence.

**9.—Contemporaneous Offenses—Charge of Court.**

Where evidence of contemporaneous offenses is admitted, it is proper for the court to limit the consideration of the same to the purpose for which it can alone be considered by the jury, viz., identity in developing the res gestae of the alleged offense, or to prove the guilt of the accused by circumstances connected with the commission of the offense charged, or to show the intent of defendant and his motive.

Appeal from the District Court of Coryell. Tried below before Hon. W. J. Oxford.

Appeal from a conviction of white-capping; penalty, two years imprisonment in the penitentiary.

The opinion sets out the indictment. Defendant made a motion to quash the indictment, as follows, viz: "1. Because the indictment charges no offense against the penal laws of this State. 2. Because the letter, as set out in the indictment, does not show upon its face any threat and is not coupled with any declaration, by the sender, to do any act whatsoever. 3. Because the signs therein made are not by innuendo given any meaning, purpose, or application to anything or person. 4. Because there is a variance and patent ambiguity in the names as charged in the indictment in this: the indictment charges Jim Owens to be the injured party and to whom the letter was sent; and in the indictment, in setting out the letter as addressed by sealed envelope, the address is Jim Owes, another and different person. 5. Because there are no innuendoes in the indictment showing the intention of the sender to be different from the person addressed, to wit, Jim Owes." The motion to quash was overruled.

*Stinnett Bros.* and *J. H. Arnold,* for appellant.—Before a charge of white-capping can be sustained by causing to be sent to another person an anonymous notice, threats, and signs, the letter so sent, in order to support an indictment, must contain upon its face a clear declaration

upon the part of the sender to do some act, to wit, to do personal violence or injury to property, etc. Penal Code, art. 314a; Hansen v. State, 34 S. W. Rep., 929.

One of the main questions to determine under the above proposition is the proper construction of the statute defining white-capping, to wit, article 314a. The construction of said article will determine whether or not the alleged letter upon its face constitutes an offense, and whether it will support the indictment. The letter alleged to have been sent, and set out in the indictment by its tenor, and therein charged to be "an anonymous notice, threat, and signs," and upon which the indictment is predicated, contains no declaration whatever upon the part of the sender to do any act whatsoever. It is true that the indictment is drawn under the latter part of article 314a, which provides that if a person "shall cause the same to be sent" with certain intention, to wit, to interfere with another's certain rights therein named, he shall be deemed guilty of white-capping. The court will observe the word "same." Hence, if we can determine what an instrument must contain in order to constitute an offense, or be sufficient to support an indictment when posted on or near premises, then we can determine what the instrument must contain when sent; because the statute expressly says "the same." That is, an instrument that would constitute an offense upon its face, when posted on or near premises, etc., would also constitute an offense when sent so far as the indictment is concerned. It is true, the State would have to go farther and prove the intent with which it was sent. The same instrument that would support an indictment when posted on or near premises, etc., would upon its face support an indictment when sent out. But when sent, each and all of the elements must appear upon the face of the instrument that would necessarily have to be and appear upon its face when posted on or near premises. Now, what would of necessity (made so by force of the statute) have to be and appear upon the face of a notice when posted on or near premises? The indictment sets out by tenor the instrument and alleges it to be "an anonymous notice, threat, and signs." Now, suppose this instrument, as set out in the indictment, had been posted on or near the premises of another, and the owner of such premises had taken it down and delivered it to the State, would it support an indictment under the statute of white-capping? It certainly would not. If not, then why? We will answer first from a negative standpoint, and then affirmatively. Because the statute does not say if any person shall post any anonymous notice on or near the premises of another he shall be deemed guilty of white-capping. Nor if he shall post signs on or near the premises, etc., he is guilty. Nor if he shall post a threat on or near the premises of another (regardless of what the threat consists, or what it is about or to whom directed) he shall be deemed guilty of white-capping. But the statute does say, "to do personal violence or injury to property." Hence to read the statute as applied to the three things named in the indictment, it would

read as follows: "Any person who shall post any anonymous notice, or signs or threats to do personal violence or injury to property on or near the premises of another shall be deemed guilty of the offense of white-capping. If the declaration to do is essential when posted, it is also essential when sent, because the article. says "the same," when sent. Now, the contention of the State on trial below seemed to be that as each was separated by the disjunctive or (notice or signs or threats) that they were independent of each other, and each constituted an offense without any declaration upon the part of the sender. We concede that anonymous notice, signs, or threats are independent of each other. But we can not concede that the statute means that an abstract notice, nor abstract sign (standing alone) of itself would constitute the offense of white-capping.

Now let us leave off the declaration to do, and consider them abstractly and see where such reasoning and construction of the statutory article would lead. First, we will take the notice named in the article, "anonymous notice," which is also the allegation in the indictment. Now, the Penal Code, article 10, provides that words may be specially defined by statute; but all words not specially defined are to be taken and construed in the sense in which they are understood in common language. We would now ask, what is "an anonymous notice?" It is a book, or any writing of any kind or character, to which the author does not sign his name. There are no grades, degrees, or kinds of anonymous notice. It takes the want of but one thing to make any book or any writing anonymous, to wit, the withholding of the author's name. Now, suppose one should go by the premises of another in spring-time, and looking into his field should see his young corn about two inches high, and the burrs and grass about three inches high and very thick; and he were to write the following notice and post it on his gate post leading into the farm, "Say, Mr. ———, having had experience in farming I hereby notify you to clean out the grass and chop down the burrs, that your corn may grow," and on the same paper make a sign of a man with a hoe in his hand, but to this notice he signs no name. What would it be? There is no way to evade the answer. It would be an anonymous notice. Why? Not because of its contents, but because the author signed not his name. No one would say the above supposed writing would support an indictment for white-capping. Yet it is just as much anonymous as the one in the indictment. We are here met with the contention: It is not of the same character or style; and the character and style have a great deal to do with it. But we answer the contention with the words of the statute, which says, "post any character or style of notice," thereby destroying any distinction one might attempt to make as to character or style of notice. Such reasoning and such construction of the statute would lead to absurdity. That it makes no difference what the contents of the notice may be, whether bad or good, if no name is signed it is anonymous and therefore an offense. Now suppose the writer of the

above supposed notice had, in addition to what is written, added to the notice the following language: "And you are further notified that if all the burs and grass are not hoed out of this crop within ten days from this date, that I in connection with others, will strip you and hit you one hundred licks on the naked back with a cowhide." The court would then say this declaration to do personal violence brings it within reach of the statute; would support an indictment; take the declaration out, and it is nothing under article 314a. By the same reasoning on the word signs named in the article we reach the same absurdity. What is a sign? As used in the statute it is grammatically a noun, and is defined "a token, signal, mark or symbol;" and a symbol is a type, sign, or representation. There are no degrees in signs. It may be an emblem or representation of different things; but still it is a sign. It may be a cross or sign representing a boy, cow, hat, dog, gun, or any other known object; be it good or bad, it is simply and still only a sign. The statutory articles uses the general word signs, undefined. Hence, if one abstract sign constitutes the offense, then any abstract sign, be it good or bad, must constitute the offense of whitecapping. Suppose the sender should sign his name and then set up as a defense that the signs and notice sent or posted were not anonymous, and for that reason constituted no offense. We would not like to be the attorneys presenting such a defense to your honor. The court evidently would say, "We are not looking at the bottom of the instrument to see whether you signed your name or not; but we are looking at the body of the instrument to see if you have therein declared that you will do personal violence or injury to property." Hence we believe that, viewing this article from all the standpoints authorized in construing a statute, the only construction that can be given same is, that in order for such notice, signs, and threats to be sufficient to support an indictment, there must appear in connection therewith a clear declaration upon the part of the sender to do personal violence or injury to property, whether such notice be posted or sent; and nothing of the kind appearing upon the instrument set out in the indictment, it is wholly insufficient to support a prosecution. But again, why did the law makers place in this article the words, or sentence, "to do personal violence or injury to property"? Why not leave them entirely out, if they constitute but a parasite and serve no purpose? If our contention as to the construction of this statute is not correct, then we can leave out said sentence and in no way affect the definition of white-capping. But these words are there and constitute a part of said article, and in construing the same these words, "to do personal violence or injury to property,' must have a place somewhere, and must serve some purpose. If the place and purpose are not as we have construed them, and here contend, then we confess our inability to use them at all. They are a part of the definition; they express and define a material element in the offense of white-capping. Hence the material element by them named must of necessity appear upon the face of the

notice, signs and threats, otherwise the notice would be insufficient to support an indictment.

When a writing is made the basis of an indictment, and such alleged writing is not in any language, but is made up of signs and symbols, and such signs and symbols are not specially defined by statute, such instrument will not support an indictment nor admit of proof or construction, neither by the court or jury, though it be set out by its tenor, unless such signs are by innuendoes reduced to English language, and such innuendoes must be a reasonable construction of such signs. 72 Texas, 118.

When the name of a person addressed in writing is material in charging an offense, and the address alone determines to whom the writing should be delivered, and for whom it is intended, an indictment which charges the offense, or a material element of the offense, to consist in causing such writing to be sent by mail, and charges in its purport allegations that the party sending knowingly caused such instrument to be sent to a certain person, alleging such person to be the injured party, and then in its tenor alleges the person addressed to be another and different person, constitutes a material variance, so repugnant the one to the other as to charge no offense; unless the instrument further alleges by innuendoes that the address set out by its tenor was intended by the sender to be for and mean the alleged injured party; or unless the names so alleged be "idem sonans." Hanson v. State, 34 S. W. Rep., 929; Westbrook v. State, 23 Texas Crim. App., 401-404.

The court erred in permitting the State, over defendant's objections, to offer in evidence the envelope addressed to "Jim Owes, Boaz, Texas," because the indictment charges that the letter was sent by mail to Jim Owens, at Boaz, Texas. The envelope and its address so offered, as the envelope containing the letter, shows upon its face to be addressed to Jim Owes, Boaz, Texas. Because the indictment sets out that the envelope containing the alleged notice was addressed to "Jim Owes, Boaz, Texas." That said envelope so addressed would not be admissible as an address to Jim Owens and as conveying its contents to Jim Owens. Nor to show that the sender intended that Jim Owens should receive the said envelope or its contents. If such was the sender's intention, then the same must be aided or shown by parol evidence, and parol evidence would not be admissible to show that the sender meant another and different person, because there is no innuendo laid in the indictment charging that by the address, Jim Owes, the sender meant and intended Jim Owens, and that the Jim Owens charged in the indictment as having received the same was the person so meant by the address, Jim Owes. Hanson v. State, 34 S. W. Rep., 929; Westbrook v. State, 23 Texas Crim. App., 401-404; Roberts v. State, 2 Texas Crim. App., 4.

The court erred in permitting the State to introduce in evidence the letter set out in the indictment and therein charged to constitute the anonymous notice, threat, and signs, over defendant's objections made

at the time: (1) Because the same shows no offense upon its face; that it contains no declaration by the sender to do any act whatsoever. (2) Because the signs contained in said letter are not named nor defined by statute, and there are no innuendoes in the indictment giving to them any meaning or purpose; for the want of which the same can not be construed. (3) Because said letter so offered is the letter contained in the sealed envelope mailed at Leon Junction addressed to Jim Owes, Boaz, Texas. The envelope being addressed to another and different person than Jim Owens, its contents would not be admissible as a letter sent by mail from Leon Junction, Texas, to Jim Owens, at Boaz, Texas.

The address upon a sealed envelope determines to whom the written contents of such envelope is sent and to whom same belongs, when no further instructions are therein given; and such writing is not addressed to any person. Such written instrument is not admissible in evidence as a letter sent to another and different person than the person addressed upon the envelope. Hopson v. Brunwankel, 24 Texas App., 606-610.

The court erred in permitting the State, over defendant's objections, to introduce in evidence the parol testimony of the witness Jim Owens, as follows: "I know of no person in that neighborhood (meaning Boaz) by the name of Jim Owes, and know of no one by that name who gets his mail at Boaz." Because the said testimony was immaterial and irrelevant in this, that it threw no light upon the address as written upon the envelope, and could not change the fact that the written address was to Jim Owes; because said testimony was an admission upon the part of the State that Jim Owes was another and different person from Jim Owens; and because said parol testimony is not admissible to show, either in a direct or indirect way that the sender intended by the address, Jim Owes, the person Jim Owens, there being no innuendoes in the indictment upon which to predicate parol evidence showing that another and different person was meant and intended by the sender.

Parol evidence is not admissible to vary the plain terms of a written instrument; nor to show that another and different person was meant than the person addressed by such writing; nor to show that the sender, by addressing one certain person, intended that another receive same, where there are no allegations in the pleading or indictment upon which to predicate such parol proof.

The above proposition is fundamental and needs no authorities. But the case of Hansen v. State, 34 Southwestern Reporter, 929, seems to cover the point here raised.

The court erred in his written charge to the jury, wherein he charged: "The defendant has pleaded not guilty and also a special plea of former conviction for the same transaction." And then proceeded to charge the jury peremptorily on defendant's special plea as follows: "The evidence is wholly insufficient to establish said special plea, and your verdict will therefore be 'We the jury find defendant's special plea untrue.'" Because said plea was good upon its face; and evidence having

been offered and admitted, the truth of said plea was a question of fact to be submitted to the jury under an appropriate charge along with the plea of not guilty.

A special plea of former conviction in a felony good upon its face as to the same transaction, and the same is supported by any evidence at the trial, it is then an issue of fact to be submitted to the jury whether it is true or untrue, and the court can not charge that the evidence is wholly insufficient to support such plea. Code Crim. Proc., arts. 563, 579; Grisham v. State, 19 Texas Crim. App., 512, and authorities there cited.

Defendant introduced the indictment in cause 2207 and verdict of the jury and judgment of court thereon, and proved by the State witness Ed B. Fletcher that the E. M. Dunn in this cause was the same E. M. Dunn in former cause 2207; that the letter charged to have been mailed by defendant in this cause 2255 to Jim Owens and the one for which he had been convicted were each mailed at the same time and place, each addressed to the same destination, put up together, stamped at the same time and sent together. Simco v. State, 9 Texas Crim. App., 338; Sedberry v. State, 46 S. W. Rep., 639; Wright v. State, 17 Texas Crim. App., 152; Wright v. State, 40 S. W. Rep., 492.

*Rob't A. John,* Assistant Attorney-General, for the State. [No briefs for the State found in the record.—Reporter.]

BROOKS, JUDGE.—Appellant was indicted under what is ordinarily termed "the white-capping statute," was tried and convicted, his punishment being assessed at two years confinement in the penitentiary.

The indictment is as follows: "In the name and by the authority of the State of Texas, the grand jurors for the county of Coryell, State aforesaid, duly organized as such, at the January term, A. D. 1901, of the District Court for said county, upon their oaths in said court present that E. M. Dunn, on or about the 9th day of April, A. D. 1900, and anterior to the presentment of this indictment, in the county of Coryell and State of Texas, and with the intention of interfering by frightening him with the right of Jim Owens to occupy his (the Jim Owens) premises, he, the said Jim Owens, being then and there the owner and occupant of certain premises, said premises being then and there situated and being in justice precinct No. 4, in the County of Coryell, and State of Texas, and with the intention of interfering, by frightening him with the right of said Jim Owens to follow his legitimate occupation, calling, and profession, the same being that of a farmer and stockman; and he, the said Jim Owens, being then and there in the pursuit of and engaged in said occupation of a farmer and stockman, and with the intention of causing the said Jim Owens to abandon his said premises and to abandon the said county and precinct in which he, the said Jim Owens, then resided, to wit, in justice precinct No. 4, and in Coryell County, State of Texas, did then and there unlawfully, willfully, and knowingly cause to be sent to the said Jim Owens by the United States mail service,

and by mailing and posting the same for transmission and delivering
in the United States postoffice at Leon Junction, a town and United
States postoffice in Coryell County, Texas, an anonymous notice, threats,
and signs of the tenor following:

" 'Jim Owens went to Hell June 20th, 1900.'

 

—and which said notice, threats, and signs were by the said E. M. Dunn
placed in the mail box at the said United States postoffice at the said
Leon Junction, duly inclosed in a sealed envelope, which said envelope
was then already duly stamped with a United States two-cent postage
stamp, and on which envelope was the following pencil-written address,
viz: 'Mr. Jim Owes, Boaz, Tex.,' and whereby and by the means afore-
said, the said E. M. Dunn did then and there unlawfully, willfully, and
knowingly cause said notice, threats, and signs to be sent, and the same
was then sent, by due course of the United States mail, from said Leon
Junction postoffice to the said Jim Owens at Boaz, in Coryell County,
Texas, and from which said Boaz postoffice said Jim Owens did receive
and obtain said notice, threats, and signs, said Boaz being then and
there the postoffice address of the said Jim Owens,—against the peace
and dignity of the State."

Appellant filed a plea of former conviction, the substance of which is
that appellant had been previously convicted of sending a white-capping
letter to Mart Robinett of the exact tenor as the letter contained in the
above-quoted indictment, except Mart Robinett's name was placed in
lieu of Jim Owens'. The proof shows that both letters were mailed at
one and the same time. Upon this state of facts we do not think the
court erred in instructing the jury to disregard the plea, for, if appel-
lant had written six white-capping notices to six different persons and
mailed them at one and the same time, he would be guilty of six dif-
ferent offenses. The mere fact that two offenses are committed contem-
poraneously does not make them any the less two distinct offenses.
Keaton v. State, 41 Texas Crim. Rep., 621.

Appellant insists the indictment is defective on the grounds: (1)
That the same charges no offense against the laws of Texas; (2) because
the alleged letter set out in the indictment does not show upon its face
any threat, and is not coupled with any declaration by the sender to
do any act whatsoever; (3) because the indictment does not by innuendo
give to the signs any meaning, purpose, or application to any person or
anything whatsoever; (4) because there is a patent ambiguity in the
name of the person to whom the letter was addressed as set out in the

indictment, and the person to whom the indictment charges the same to have been sent.

This prosecution is based under the Act of 1899 (see Acts Twenty-sixth Legislature, page 215), and is as follows: "Any person who shall post any anonymous notice or make any threats or signs or skulls and cross bones, or shall by any other method post any character or style of notice or threat to do personal violence or injury to property on or near the premises of another, or who shall cause the same to be sent with the intention of interfering in any way with the right of such person to occupy said premises or to follow any legitimate occupation, calling, or profession, or with the intention of causing such person to abandon such premises, or precincts, or county, in which such person may reside, shall be deemed guilty of the offense of white-capping, and upon conviction therefor shall be punished by confinement in the penitentiary for any period of time not less than two years nor more than five years." An inspection of this article shows that within the legislative intent various things make the offense of white-capping. To illustrate: The statute provides that, if any person shall post any anonymous notice, or make any threats or signs of skull and cross bones, or by any other method post any character or style of notice or threat to do personal violence, he would be guilty of white-capping, within the contemplation of the statute, if he did either of the above-enumerated things. As contended by appellant, however, in order to be guilty, the anonymous notice or sign must contain a threat to do personal violence. Futhermore, the statute provides that he would be guilty of white-capping who should post an anonymous notice, or post a threat, with intent to injure property on or near the premises of another. Then the statute further provides, as the indictment here charges, if one sends any anonymous notice, or sign, or threat, or shall cause the same to be sent with intention of interfering in any way with the right of such person to occupy said premises or to follow any legitimate occupation, calling, or profession, or if he should do the last-named things with the intent of causing such person to abandon such premises, precinct, or county, in which such person may reside, he will also be guilty of white-capping. And under the provisions of the last clause it is not necessary that the notice should contain a threat to do personal violence, as contended by appellant; but, if the notice or sign is sent with the intention of interfering with the person's right to occupy his premises, or intent to frighten him, thereby causing such person to abandon such premises, or causing said person, by frightening, to cease to occupy his premises, then and in that event, the intent of the person being to interfere with the possession and occupancy of the premises by frightening him, it would come within the spirit and letter of the statute, regardless of whether said notice contained a threat to do personal violence. The notice and sign, as contained in the indictment, says: "Jim Owens went to Hell June 20th, 1900." Then follows a drawing of a coffin and a scaffold, from which a body is suspended by the neck. The allegations of the indictment

show this notice and sign was sent to prosecutor on April 9, 1900. It is clearly a notice to prosecutor that he would be hanged on June 20, 1900. Appellant's counsel further ingeniously insist that this notice is so symbolic as to require innuendo averments in the indictment in order to make it valid. We do not think so. We think the letter, as copied in the indictment, indicates that appellant intended to convey to prosecutor the idea that he would die on June 20, 1900, by being hanged. We think this conclusion is as readily perceived from the instrument itself as if the statement had been made in so many words. Innuendo averments are only necessary to make plain matters that are ambiguous. The matter here under consideration is not ambiguous. Furthermore, for the sake of argument, it may be conceded that this is incorrect, yet the indictment containing the drawing of a scaffold with a man hanging from it, and the drawing of a coffin, and the pleader having alleged these signs were calculated and intended to frighten prosecutor, thereby interfering with the right of said prosecutor to follow his legitimate occupation, calling, and profession, etc., would of itself make a valid indictment, since the statute specially inhibits the sending of a sign for that purpose.

The last ground of his motion is: "There is a patent ambiguity in the name of the person to whom the letter was addressed as set out in the indictment and the person to whom the indictment charges the same to have been sent." It is true, as contended by appellant, the indictment does allege that the notice was sent to Jim Owens, the prosecutor, and that it was inclosed in an envelope addressed to "Mr. Jim Owes, Boaz, Texas." But we notice the pleader alleges that by said last address, and the mailing of said letter so addressed, appellant did unlawfully, knowingly, and willfully cause said notice, threat, and signs to be sent to Jim Owens. If this needs any innuendo averment to the effect that, when appellant wrote "Jim Owes" he intended to write "Jim Owens," we think the innuendo averment is substantially stated in the indictment. But the letter addressed to Jim Owes containing the letter addressed to Jim Owens, coupled with the testimony of the prosecutor that no one by the name of Owes lived at Boaz, Texas, and that he was the only Jim Owens living at said postoffice, coupled with the record evidence of the animus of appellant towards prosecutor, shows clearly that the address upon the envelope was a clerical mistake in leaving out the letter "n." So we think the indictment is good. So it follows, from what has been said, that the court did not err in overruling appellant's objection to the introduction of the envelope addressed as indicated; nor did the court err in permitting the State to introduce in evidence the letter set out in the indictment, and charged to constitute the anonymous notice, threat, and sign. It was proper to permit prosecutor, Jim Owens, to testify to the receipt of the letter offered in evidence, and to state that he knew of no person in that neighborhood by the name of Jim Owes, and no one by that name who gets mail at Boaz, Texas.

Appellant insists the court erred in permitting the State to prove

by Ed B. Fletcher the following: "Which are you most certain of,—that defendant did mail the letters (meaning the letter in the indictment, and admitted in evidence), or that the letters were mailed on the same day they were stamped, and that the stamps on them state the correct day they were mailed; that is, April 9, 1900?" To which question witness answered "he was more certain that defendant mailed the letters than he was that he stamped them on the day they were mailed, and that the stamp states the correct day on which they were mailed." Where a witness states two facts, the accuracy of both or either of which is questioned, it is permissible for such witness to state which fact he is most certain of. To do so is not invading the province of the jury, but simply testing and proving the accuracy and correctness of the witness, or at least tending to do so.

He insists the court erred in failing to charge the law of circumstantial evidence. Fletcher, assistant postmaster, testified: "I have seen these three letters [being handed to him for identification]. One is addressed to Jim Owes, Boaz, Texas; second one to Mart Robinett, Boaz, Texas; and the third one to Bob Williams, Boaz, Texas. Boaz is a postoffice in Coryell County. I first saw them in the mail box at Leon Junction in April, 1900. I know E. M. Dunn. I saw him put these envelopes in the mail box in April, 1900. Don't know what day of the week it was. I was standing out in the store at the time the letters were mailed, ten or twelve feet from appellant. Two or three minutes after he dropped the letters in the box I went into the postoffice, and, after getting A. J. Cox's mail, I took the three letters out of the mail box, stamped each of them with the Leon Junction postoffice stamp. I recollect that just before defendant mailed these three letters that I took all of the letters out of the mail box, and when I went in the postoffice department to get Mr. Cox's mail, the letters now shown me were in the mail box." This is positive evidence as to the mailing of the letters by defendant, and hence it was not incumbent upon the court to charge on the law of circumstantial evidence.

Appellant complains of the following portion of the charge of the court: "Evidence has been introduced tending to show that an envelope was dropped in the mail box at Leon Junction, addressed to Bob Williams, Boaz, Texas, which contained an instrument which was admitted in evidence when Bob Williams was on the stand; and that an envelope addressed to Mart Robinett, Boaz, Texas, was also dropped in the said box at the time. The State claims that the envelope introduced in evidence by the State, addressed to Jim Owes, was mailed at Leon Junction, and at the time the instrument described in the indictment was dropped in said mail box at Leon Junction (if it was placed in said box). You are instructed that you can only consider such evidence and testimony for the purpose for which it was admitted; that is, to establish the identity, in developing the res gestae of the alleged offense, or to prove the guilt of the accused by circumstances connected with the commission of the offense (if any) for which defendant is on trial, or

to show the intent with which defendant acted with respect to the send-ing or causing to be sent (if he did do so) the instrument described in the indictment. And you will consider such evidence for no other purpose, for you can not convict defendant for mailing or sending any other instrument or document than the one described in the indictment herein (if he did so)." We think this charge, taken as a whole, properly pre-sents the law applicable to this phase of the evidence, in that it limits the consideration of the same by the jury to the question of intent and motive of appellant in sending the letter in question, if he did so send it. The other letters were clearly admissible for this purpose. Denton v. State, 42 Texas Crim. Rep., 427; James v. State, 41 Texas Crim. Rep., 190.

We have examined all of appellant's assignments of error and do not think any of them present cause for reversal, and the judgment is ac-cordingly affirmed.

*Affirmed.*

### DISSENTING OPINION.

HENDERSON, Judge.—The opinion of the court sets out the in-dictment and the objections thereto. This brings in review for the first time the Act of 1899 (see Acts Twenty-sixth Legislature, page 215), defining and punishing the offense of white-capping. I quote the first section of said act, as follows: "Any person who shall post any anony-mous notice, or make any threats or signs as skull and cross bones, or shall by any other method post any character or style of notice or threat to do personal violence or injury to property on or near the premises of another, or who shall cause the same to be sent with the intention of interfering in any way with the right of such person to occupy said premises or to follow any legitimate occupation, calling, or profession, or with the intention of causing such person to abandon such premises, or precinct, or county, in which such person may reside, shall be deemed guilty of the offense of white-capping, and upon conviction therefor shall be punished by confinement in the State penitentiary for any period of time not less than two years, nor more than five years."

It will be seen from an inspection of the indictment, that it charges the commission of the offense to consist in appellant's causing to be sent to the prosecutor, in a letter, the following anonymous picture or effigy, with the words written above the same, to wit:

"Jim Owens went to Hell June 20, 1900."

 

It further charges that same was sent to the prosecutor, Jim Owens, with the intention of causing him to abandon his said premises, etc., and to

interfere with his pursuing his legitimate occupation, he being a farmer and stockman. I do not think the indictment charges a complete offense, because it fails to set out all of the essential elements of the offense as prescribed by the statute. Nor do I think the indictment is sufficient, because it fails to allege by explanatory averments the character or description of the sign or effigy set out in the indictment.

The first proposition involves the construction of the white-capping statute. A majority of the court hold, as I understand from the opinion, that there are two distinct character of offenses defined in the statute. One is an anonymous notice or sign posted or sent, implying a threat to do personal violence to another or injury to his property; and the other is an anonymous notice or sign posted or sent with the intention of interfering with one's right to pursue his occupation, or to occupy his premises, etc. While, under the construction I place upon the statute, it requires both of the above to constitute the completed offense; that is, the anonymous notice or sign must imply a threat to do personal violence to another, or injury to his property, and must be posted or sent with the intent to interfere with or cause one to abandon his calling or his premises. If the construction placed on this statute in the opinion is correct, then it is not an offense to send or cause to be sent an anonymous notice or sign threatening to do personal violence to another or injury to his property, for the word "post" only is used in this connection. Consequently, to be an offense, such sign must be posted on or near the premises of another, and the sending of it would not constitute an offense. And again, the posting of such sign with intention of interfering with one in his calling or in the occupation of his premises would not be an offense, because the word "sent" is used in this connection. As I view the section in question, the first part describes the character of sign or notice which must be posted or sent; that is, it must imply a threat to do personal violence to another, or injury to his property; and, in addition to this, it must be sent or posted with the intention of interfering with one's right to his premises, or his right to follow his occupation, etc. To bear out this construction, it will be seen that the statute, after first describing the character of anonymous notice which may be posted, then proceeds as follows, "Or who shall cause the same to be sent with the intention of interfering," etc. Now, what is meant by the use of the language "the same"? Evidently it must refer to the character of anonymous notice or sign previously described. And if this must imply a threat to do personal violence to another, or injury to his property, then it follows that the character of notice sent, as well as the character of notice posted, must be to do personal violence to another, or injury to his property. And this character of notice must be posted or sent with intent to cause such person to abandon his premises, etc., or quit his calling or occupation. I gather from the language of the act that it was not within the legislative intent to punish one for posting or sending an anonymous notice merely, but an anonymous notice calculated to frighten or terrify; and it was ap-

prehended that nothing short of a sign or notice to do personal violence or injury to property would terrify or frighten one from his premises, or from pursuing his vocation. In other words, the Legislature took no account of anonymous signs or notices of an innocent character, but, in order to be a completed offense, such anonymous sign or notice must be of a character threatening personal violence or injury to property, and also be intended to interfere or frighten one from his premises or from following some legitimate occupation. It occurs to me that this construction given the statute follows logically from the words used and having due regard to all the provisions of the section. Any other construction, it seems to me, is fraught with difficulty, and runs foul of that provision of our code which says that "no person shall be punished for an offense which is not made penal by the plain import of the words used." If this be a correct interpretation of the statute, then the indictment should have been quashed because it failed to charge an offense, in that it did not allege the anonymous notice or sign implied a threat of personal violence or to injure the property of the prosecutor. Moreover, I believe a majority of the court are clearly in error in holding that it was sufficient merely to set out the picture or sign without any explanatory averments giving a description thereof. True, the picture or drawing, as contained in the indictment, looks like it might be a coffin, and the object near by may be intended as the effigy of a man with a rope around his neck, suspended from a post or tree, and the whole taken together, in connection with the writing, to wit, "Jim Owens went to Hell June 20, 1900," might be suggestive of a threat on the part of the sender to cause the death of Jim Owens. This, however, might involve, in the first instance, the skill of the artist; secondly, the skill of the copyist in pleading. Suffice it to say, the indictment leaves this to surmise or speculation. I do not believe a matter of this character should be left to be gathered by inference or intendment, but should be distinctly alleged in the indictment. I have been unable to find any case in point. But I take it in matters of this sort we can consult the analogies of the law as to pleading in similar cases. As was said by Judge Willson in Stichtd v. State, 25 Texas Criminal Appeals, 420,—which was a question of pleading in a case of slander,—"that the rules in civil cases with equal, if not greater force, are applicable in criminal cases." That was the case where the slander was uttered in a foreign language, but the indictment set out the words purported to have been spoken in the English language. It was held there was a variance; that the very language used in the foreign tongue should have been set out, and then a correct translation thereof made, and included in the indictment. To the same effect, see 1 Bish. Crim. Proc., sec. 564; 13 Enc. of Pl. and Prac., p. 48. In civil actions involving libel and slander, where the same consists in a defamatory effigy or picture, the picture is not set out at all by tenor, but it is described; and what it referred to is distinctly alleged. And the same rule is applicable to criminal cases. Newall, Defam., p. 984 (which contains

the form adopted from Archibald) ; 2 Bish. Crim. Proc., 794b, 795; Bradstreet Co. v. Gill, 72 Texas, 118. And I also note the authorities hold, where the libel consist of a picture or effigy, care should be taken to show by proper innuendoes and averments the libelous nature of the transaction, and its especial reference to the plaintiff. 13 Am. and Eng. Enc. of Law, p. 394; Odgers, Sland. and Libel, 130. I take it from these authorities that a fair construction of this statute would require a description of the picture or effigy and its meaning, and its especial reference to the prosecutor should have been shown. The indictment being defective in this respect, as well as on the proposition previously discussed, I believe it should have been quashed by the court below; and that we should here reverse the case because the indictment fails to charge any offense.

[Note.—Appellant's motion for a rehearing was overruled without a written opinion.—Reporter.]