Hitchcock, C. <T.
These cases are presented to the court, under such circumstances that it is difficult to settle them in accordance with any well established rules of chancery practice. The bills were filed, or intended to be filed, in pursuance of the provisions of the “ act to amend an act directing the mode of proceeding in chancery,” passed February 25th, 1848, (46 Ohio L. 96.) In three of the cases it is shown, that on the 15th May, 1848, suits in assumpsit were commenced *483 against Tannenwald, and the bills were filed on the 16th of the same month, and injunctions granted. On the evening of the same day, between 11 and 12 o’clock, under the bills in chancery, the goods of the defendant were taken possession of by a receiver appointed by the court. On the 17th of the same month, a suit, also in assumpsit, was commenced, at the suit of the other complainant. On the 18th day of the month_ another bill was filed, professedly in aid of the last suit. An injunction was allowed, and the same receiver appointed as in the other cases: On the 16th May, Tannenwald left the country, and it appears that an attachment was issued and levied upon a part of his goods. The claims which were the foundation of the aforesaid suits were in part' due, and in part not due. At the July term of the court of common pleas, subsequent to the seizure of the goods, judgments were rendered upon the claims of the respective plaintiffs at law, as well upon the claims which were not due, as upon those which were due. At the November term, the court ordered the sale of the property in the hands of the receiver, and it was sold accordingly. The court also entered up a decree for the several complainants, for the amount of their respective judgments, but suspended until a future term making an order for the distribution of the fund. Other creditors of Tannenwald, as well as those who had commenced suit, and recovered judgments, filed petitions setting forth their claims and praying for a pro rata division of the funds. Eventually the court of common pleas made a final decree, directing that the fund should be distributed among the creditors of Tannenwald, in proportion to their respective claims. From this decree an appeal was taken to this court. On the one side it is claimed that the only question for the consideration of this court, is, as to the distribution of this fund. Whether the first judgment is to be first satisfied, and then the others in succession, or whether all the creditors are to share in the distribution. On the other hand, it is claimed that the whole matter is open for consideration.
The entire proceeding is a novel one, and purports to be *484 under a very recent statute. It will be necessary for us to give' that statute a earful examination. Before doing this, however, it may be proper to remark, that the policy of this tate has ever been to protect the property of a resident citizen from seizure under legal process, until a judgment is first recovered against him. Whether it was the intention of the legislature, in passing the act of 1848, to' abandon this policy, is a matter worthy of serious consideration. In some states in the Union, a creditor is permitted to issue in the first instance an attachment, and seize upon the property of his debtor; but it is not so in Ohio. The property of an absent or absconding debtor may be attached, not the property of a resident citizen.
In the first section of the act of 1848, (46 vol. Ohio L. 96,) it is provided that “ where any suit at law for the recovery of money, or damages, for any cause of action which would survive,” etc., “ shall be pending, and the plaintiff or complainant in such suit, his agent or attorney, shall have reason to believe, and shall in fact believe, either, 1. That the defendant in such suit is about to abscond from his usual place of abode in the state; or, 2. That such defendant is removing, or is about to remove with his property or effects out of this state; or, 3. That such defendant is about to convey, or assign, remove, conceal or dispose of his property, with intent, or so as to defraud, hinder or delay his creditors; or, 4. That such defendant fraudulently contracted the debt, or incurred the obligation upon which such suit is brought; or, 5. That the debt or obligation upon which such suit is brought, was con tracted by the defendant out of this state, and that such defendant, with intent to defraud, hinder or delay his creditors, absconded from his former place of abode in another state or territory, district or county, or secretly removed his property from such other state, territory or district, into this state, with intent, or so as to hinder, delay, or defraud his creditors; the pendency of such suit, together with either of the causes above enumerated, shall entitle the plaintiff or complainant in such suit, to file his bill of petition against the defendant, his debt *485 ors, and those having any custody of his property, money or effects, in the same way as is provided in the fifteenth section of the act to which this is an amendment.”
The fifteenth section of the chancery act of 1881, and to which the first section of the act of 1848 seems to be an addition, provides, that when a suit is pending “ against a nonresident defendant, or against a resident defendant, who has during the pendency of said suit, either secretly departed out of the jurisdiction of the court, or secreted himself or. property within the same, so that the ordinary process of law cannot be served on either, and there should be any person or persons, res-dent within such jurisdiction, who is, or are indebted, or has in possession goods and chattels, rights, credits, moneys or effects, belonging to such non-resident, or secreting defendant, the said plaintiff at law, or complainant in chancery, may file a petition against the person or persons so indebted, or having in his possession the goods and chattels, rights, credits, moneys or effects, of such non-resident, or secreting defendant, annexing an affidavit of the truth of the allegations therein contained, and of the amount" of the debt or damages by him claimed ; and the court may, in their discretion, enjoin such other person from paying over, conveying away, or secreting such debts by him owing to said non-resident, or secreting defendant, or his goods and chattels, rights, credits, moneys or effects, until the final judgment at law, or decree in chancery, can be had in such former case. And the court, on final hearing, shall make such final order or decree between the parties, as they shall think just and reasonable.”
The intention of this section is manifest. Its provisions are applicable in a case where, after commencement of suit, a defendant absconds or secretes himself. If he had absconded before any suit was commenced, redress might be had under the attachment law. But as a debtor might abscond after suit commenced, the general assembly thought proper to prescribe ■a mode by which his debtors, or those having possession of his property, should be restrained from the payment of those debts, *486 or the disposition of the property, until the pending suit should be determined, that the same, or the avails thereof, might be applied to the satisfaction of the judgment. In this proceeding, the first step taken is by injunction, and if the injunction is not obeyed, the individual not complying with it, may be proceeded against as in other cases. After judgment, the court having the case before it, might with propriety proceed in the chancery suit, according to the provisions of the 16th section of the chancery act.
The act of 1848, provides for an additional class of cases, to which the provisions of the fifteenth section may be applied. It applies as well to resident debtors, to those who are in the open transaction of business, as to those who have absconded or secreted themselves.
The second section of the act provides, that “ every bill or petition filed under this act, shall contain a succinct statement of the cause of action for which the original suit was commenced, the amount due thereon, a brief statement of the facts claimed to justify the belief of the existence of any of the causes above specified, and shall be verified by the oath of the petitioner, his agent or attorney.
It is claimed by the defendants, that the bills in the cases now before the court, are upon the face of them defective, in not being conformed to the provisions of this section. On the other hand, it is insisted, that this court has nothing to do with this question. That it is a question peculiarly in the province of the court or judge ordering the injunction. It is further objected, that no appeal was taken from the decree, ascertaining the amounts due the respective complainants, but only from the final decree ordering distribution. It seems to this court that it is not too late to look into the entire proceedings, and in look ing into the several cases, it is manifest that things were done in great haste, as is usually the case, where there is, as there manifestly was in this case, a scramble of creditors to get possession of the property of a debtor, and, as among themselves, to acquire a priority and advantage.
*487 In the opinion of the court, this law should be construed with great strictness, as much so, perhaps, as any one in our statute book. He who would take advantage of it, must bring himself within both its letter and its spirit. We do not think that the petitions contain those precise and definite allegations which the law requires, and had the cases come before us, divested of some of their peculiar features, we should at once •have dismissed the bills.
In the third section of the act it is enacted, “ that the supreme court, or court of common pleas, or any judge of either of said courts, on being satisfied by the oath of the petitioner, his agent or attorney, or by that and such other affidavits as such' court or justice may deem it reasonable to require, of the existence of either of the five causes above enumerated, may grant an injunction to restrain the defendant in such suit, from any disposition of any property, credits or effects, belonging to the defendant in the original proceedings, inconsistent with the security of the petitioner, until the claim upon which the original suit was brought, shall have been adjusted and satisfied, or until further order of the court.”
Under this section, -a creditor, if he can bring himself to believe that any one of the five causes enumerated in the first section of the act, exists, and will make oath to that belief, assigning his reasons therefor, may put a.n entire stop to the business of his debtor, and ’ place the property of that debtor in such a situation that he cannot use it, nor even collect the debts due to him. The debtor may be restrained “ from any disposition of any property, credits or effects, * * * inconsistent with the security of the petitioner,” until the claim of the petitioner is adjusted and satisfied. There are, undoubtedly, cases where it might be proper to resort to such a remedy as this, but it is the duty of courts to see that there is no abuso, no mistake in the pursuit of the remedy. Eor it will be seen that by its application, a man in good circumstances, in prosperous business, may at once be broken up, unless he can satisfy any claim which may come against him, upon presentation. I *488 say it may be so. It would not, however, under a proper ad ministration of the law. But we must remember, that any judge,, of either the supreme court or court of common pleas, has power to issue the injunction provided for in the statute.
Although there is no provision in this statute for seizing upon the goods of the debtor, it appears in the cases now before us that upon the filing of the bills a receiver was appointed, and the property came into his hands. I am not aware that there can be any objection to this, inasmuch as it was voluntarily delivered to him by the defendant Cohen, in whose possession it was left by Tannenwald. This property has been sold, and the money is in the hands of the receiver for distribution. The question is raised as to the order of distribution. I am not prepared to say that if the proceedings had all been regular, the creditor who first filed his bill would not have gained a preference. We do not, however, feel it necessary to determine this question. In our opinion, the complainants do not bring themselves within the provisions of the statute, and we should dismiss the cases entirely but for the fact that the property of the debtor has been reduced to money, and the avails are in the hands of an officer of the court. The creditors are also before the court, not only those who have recovered judgments, but others. Under these circumstances, we believe it better to retain the case and distribute the fund, as it would have* been ■distributed under the attachment law. That is, that the said ■fund be distributed to the several creditors before the court in proportion to-their respective claims, and a decree may be taken accordingly. It is not intended by this decree to establish any general rule, as to cases under the act of 1848, but it is based upon the peculiar circumstances of this particular case.
Besides, this is carrying out the purposes of Tannenwald as •expressed before he left the state. This property was by him, as the cases show, left in the possession of Cohen, or intended so to be left, for the purpose of distribution to his creditors in proportion to their respective claims.