## The People v. John J. Whittemore.

*Criminal law—Return of examining magistrate—Malicious threats
—Blackmail—Pleading—Evidence—Disqualification
of prosecutor.*

1. The failure of an examining magistrate, on requiring a respondent to recognize to answer the offense charged, to certify his finding that the offense has been committed,—his finding being " that there is probable cause to believe that said offense has been committed, and probable cause to believe the respondent guilty thereof,"—will not support an objection that the information filed on the basis of his return was not properly filed.

2. Respondent was convicted of maliciously threatening to accuse one Paul Lucas of the crime of perjury, in violation of How. Stat. § 9093, which provides that "if any person shall, either verbally or by any written or printed communication, maliciously threaten to accuse another of any crime or offense, * * * with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do any act against his will, he shall be punished," etc. The complaint, which was followed by the warrant, charged that the respondent did, on a certain day, willfully and maliciously, verbally, threaten to accuse the said Paul Lucas of willful and corrupt perjury, and did, on the day and at the place named, threaten to make a criminal complaint for such offense against the said Lucas, unless he would sign and execute a deed of certain lands owned by him, and situated in the state of Minnesota, with the intent and purpose of procuring the signature of said Lucas against his will to said deed, and with intent to injure and defraud said Lucas, contrary to the form of the statute, etc. And it is held:

    *a*—That the complaint shows sufficiently that the' threats were verbal.

    *b*—That the complaint follows the language of the statute in its averment as to the making of the threats, and while, in the precedents, the name of the party to whom the threats were made is usually set out, the omission to do so is not fatal.

    *c*—That the complaint sufficiently sets out the intent; that the statute makes it an offense to make such threats with intent thereby to extort money or any pecuniary advantage

whatever, or with intent to compel the person so threatened to do any act against his will; and that the intent to procure the signature of Lucas against his will to a deed of land was an intent to compel him to do an act against his will, to wit, to affix his signature to a deed.

3. The attorney for the plaintiff in a suit pending in Minnesota came to Michigan for the purpose of taking the depositions of certain witnesses in the case. Among other witnesses, he examined one of the defendants, who held the legal title to the land in dispute, which plaintiff claimed had been transferred without consideration. After the testimony had been taken, the attorney had an interview with said defendant, during which, as claimed by said defendant, he threatened to prosecute the defendant for perjury unless he would convey the land to the plaintiff. This the defendant refused to do, and a few days later the attorney caused the threatened prosecution to be instituted. Pending an examination, the prosecuting attorney and the attorney for said plaintiff started to drive to the home of said defendant to procure the execution of said deed. Another attorney followed them for the purpose of preventing the execution of the deed. The deed was not executed, and the said defendant thereupon made a complaint against the foreign attorney for maliciously threatening to accuse him of the crime of perjury. After the arrest of the defendant for perjury, one of his creditors, with whom he had deposited his title deed to the land in dispute as security, informed the Michigan attorney of said arrest, and requested him to investigate the matter. Prior to the visit of the foreign attorney to the defendant to procure said deed, the Michigan attorney had seen the foreign attorney and the prosecuting attorney, and informed the foreign attorney that if he went to the house of the defendant, as proposed, to force him to execute said deed, he would follow him and prevent his doing it. On the trial of the foreign attorney for threatening to accuse the said defendant of perjury, the prosecuting attorney being disqualified from acting, the court appointed the Michigan attorney to prosecute the case. Objection being made to such appointment, the attorney so appointed testified that he was not interested for the complaining witness at the time the prosecution was commenced in any way, but that he had since been retained to defend him in the perjury case. And it is held that said attorney was not disqualified from acting under said appointment under 3 How. Stat. § 557, which provides that no attorney shall be permitted to prosecute or aid in prosecuting any person for an alleged criminal offense where he is engaged or interested in any civil suit or proceeding depending upon

the same state of facts against such person, directly or indirectly.

4. Respondent having denied making any demand whatever upon Lucas, testimony tending to show that the latter was in fact guilty of perjury was inadmissible as 'bearing upon respondent's intent; nor was such testimony admissible for the purpose of impeaching Lucas, or to disprove malice upon the part of respondent.

5. Testimony relative to the arrest of Lucas, at the instance of the respondent, for perjury, and to the attempt to secure the execution of the deed, was admissible as bearing upon the respondent's intent.

Exceptions before judgment from Alpena. (Kelley, J.) Argued June 29, 1894. Decided December 7, 1894.

Respondent was convicted of maliciously threatening to accuse a certain person of the crime of perjury. Conviction affirmed, and record remanded for further proceedings. The facts are stated in the opinion.

*W. E. Depew* and *J. D. Turnbull*, for respondent.

*A. A. Ellis*, Attorney General, and *Joseph H. Cobb*, for the people.

MONTGOMERY, J.   Respondent was convicted of maliciously threatening to accuse one Paul Lucas of the crime of perjury, in violation of How. Stat. § 9093.

The facts are that the respondent is an attorney, residing at St. Paul, Minn., and was the attorney of one Joseph Stehr, who had a suit pending in the Minnesota courts against Paul Lucas and others, involving the title to certain lands in St. Paul. Respondent came to Alpena in December, 1893, for the purpose of taking the depositions of witnesses in the case referred to, and, as subsequent events would indicate, with the further purpose of procuring a deed from Lucas to his client. On the 13th, 14th, 15th, and 16th of December, respondent examined

Paul Lucas as a witness in the case, before a circuit court commissioner. After the testimony was concluded, respondent invited Lucas to his room at the hotel, and, while there, Lucas swears, in substance, respondent threatened to prosecute him for perjury unless he would deed the land to his (respondent's) client, for a named consideration. These threats did not prove effectual, and on the 25th day of January, 1894, respondent made a complaint against Lucas for perjury, and caused his arrest. An examination was not had at once, but Lucas. was taken to the office of the prosecuting attorney, who permitted him to go at large, with instructions to report to him (the prosecutor); and, apparently, the prosecutor interested himself in the effort to procure the deed from Lucas and his wife. On the 27th day of January the prosecuting attorney and the respondent in this case and Lucas started to drive from Alpena into the country, where Lucas resided, to procure the execution of the deed. Mr. J. H. Cobb, the attorney who now represents the people in this case, one Charles Golling, Judge Kelley, who presided at the trial, and the sheriff of Alpena county, followed. the party for the purpose of . preventing a consummation of the transaction. The deed was not procured, but Lucas returned to Alpena, a justice was called in, and the respondent was complained against for the offense here in controversy. The other facts necessary to an understanding of the case will be stated in connection with the particular questions to which they relate.

1. It is claimed that the information was not properly filed, for the reason that the respondent was never properly held for trial by an examining magistrate; the precise point being that the justice failed to return that he found that an offense had been committed, but certified that he found that there was probable cause to believe that an offense had been committed, and that there was probable

cause to believe the respondent guilty thereof. It was held in *Turner v. People*, 33 Mich. 368, that it was not necessary for the justice to make such certificate to the circuit court, and that the fact of taking bail imports the decision of the justice, and the fact of giving it imports a recognition of it by the accused. The ruling has been followed in *Cargen v. People*, 39 Mich. 549, and again in *People v. Ten Elshof*, 92 Mich. 167. It is suggested that the return fairly excluded the idea that the justice found as a fact that the offense had been committed. But the case is in this respect identical with that of *People v. Ten Elshof*, and is ruled by that case.

2. It is next contended that the complaint and warrant set forth no offense. It is claimed that the complaint does not specify the intent mentioned in the statute, or sufficiently set forth the threats, or specify to whom the threats were made, or state whether the threats were in writing or verbal. The warrant follows the complaint. The complaint was, in substance, as follows:

"That the said John J. Whittemore did, on the 16th day of December, 1893, willfully and maliciously, verbally, threaten to accuse him, the said Paul Lucas, of willful and corrupt perjury, and did then and there, on the 16th day of December, 1893, at the city of Alpena, county and State aforesaid, threaten to make a criminal complaint for such willful and corrupt perjury against him, the said Paul Lucas, unless he would sign and execute a certain paper writing and deed conveying to another the lands and tenements of him, the said Paul Lucas, situate and being in St. Paul, in the state of Minnesota, with the intent and purpose of procuring the signature of the said Paul· Lucas against his will to said certain paper writing and deed, conveying his lands and tenements as aforesaid, with intent to injure and defraud him, the said Paul Lucas, contrary to the form of the statute," etc.

We think the complaint does show sufficiently that the threats were verbal.

As to the point that it is not stated to whom the threats

were made, the complaint follows the language of the statute in this regard, and while, in the precedents, the name of the party to whom the threats are made is usually set out, we find no case which holds that the omission is fatal to the indictment. An indictment in this form was held good in *State v. Young*, 26 Iowa, 122, although the precise point seems not to have been distinctly made.

We also think the complaint in the present case sufficiently sets out the intent. The statute makes it an offense to make such threats with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do any act against his will. The intent to procure the signature of Paul Lucas against his will to a deed of land was an intent to compel Paul Lucas to do an act against his will, to wit, to affix his signature to a deed.

3. The court appointed J. H. Cobb to represent the people on the trial, and this is complained of. Mr. Cobb had not acted as attorney for Lucas in any civil proceeding which was pending, so as to be disqualified under the provisions of the statute (section 557). It appeared that Mr. Cobb was attorney for one Robert Rea, who had loaned $50 to Lucas on his (Lucas') depositing with Rea his title deed to the land in question. After Mr. Lucas' arrest, Mr. Rea said to Mr. Cobb that Lucas had been arrested, and requested Mr. Cobb to investigate it. Mr. Cobb saw Mr. Whittemore and the prosecuting attorney, and told Mr. Whittemore that, if he went into the country to force Lucas to give the deed, he (Cobb) would follow him, and prevent his doing it; and it appears that he did so. He testified in the circuit court that he was not interested for Lucas at the time the prosecution was commenced in any way, but that he had since been retained to defend Lucas in another criminal proceeding. We think it cannot be said that he was employed as attorney in any civil

proceeding involving the same state of facts as that involved here. The determination of this case would not in any way affect the criminal prosecution pending against Lucas for perjury.

4. The circuit judge charged the jury, in effect, that if the threats were made with the wrongful intent charged, and were made maliciously, the offense was complete, whether Lucas was or was not guilty of the offense of perjury. The respondent complains of this holding, and contends that if the respondent, having an interest in the matter, believed that Lucas was guilty of perjury, he had the right to threaten to prosecute Lucas, unless he should place the title where it belonged. But we think the law is settled otherwise. 2 Whart. Cr. Law, § 1664; Rosc. Cr. Ev. *979; *Rex v. Gardner,* 1 Car. & P. 479; *Reg. v Cracknell,* 10 Cox, Cr. Cas. 408; *Com. v. Buckley,* 148 Mass. 27; *Com. v. Coolidge,* 128 Id. 55; *State v. Goodwin,* 37 La. Ann. 713. The respondent in the present case denied having made the threats imputed to him, or having made any demand upon the prosecuting witness. His statement of the conversation was, in effect, that he offered to compromise the litigation with the complaining witness.

Respondent further contends that the testimony tending to show that Lucas was in fact guilty of perjury was proper for two purposes:

"It would tend to show that he was not a truthful witness, and that the threats were not made maliciously."

It has been held in some cases that, when the question involved is whether the demand for money is a demand for what respondent is in no way entitled to, evidence that the prosecuting witness has been guilty of an offense for which the accused is entitled to demand compensation is admissible, as bearing upon the question of the intent; that is, to determine whether the accused is seeking to

recover his own, or to extort money which does not belong to him. *Com. v. Jones,* 121 Mass. 57; *Mann v. State,* 47 Ohio St. 556. The reasoning of the latter case is against the clear weight of authority, as is apparent from an examination of the cases hereinbefore cited. In the case of *Com. v. Jones,* the fact that a demand was made upon the complaining witness was admitted by the accused, and evidence that the complaining witness had been guilty of a wrong against him, for which he was entitled to demand compensation, was held admissible, as having a bearing upon the question of the respondent's intent, he having denied a threat of prosecution. But in the case of *Com. v. Buckley,* decided by the same court, it was held that evidence that the complaining witness had in fact committed the offense was not competent for the purpose of impeaching him; and it was also said of the other contention made by the respondent here, that it was competent on the question of malice:

"The malice required by the statute is not a feeling of ill will toward the person threatened, but the willful doing of the act with the illegal intent. If the threat was willfully made with the intent to extort money, it was a malicious act, and the fact that the charge was true would be immaterial."

We think there was no error in the ruling in this regard.

5. Respondent's counsel asked an instruction as follows:

"If the respondent said to Paul Lucas, ' You come not in my will and give me a deed, I send you and your sister to State prison for life,' this would not constitute a crime."

The circuit judge charged the jury, and we think correctly:

"It would not be, necessary that the precise words should be used, that he [the respondent] would complain of him [the complaining witness], or charge him with the

commission of perjury. If he used language which clearly imported that intention,—clearly implied and imported that he intended to charge him with false swearing and perjury,—it would be sufficient."

And, further:

"It is claimed here by the people that the direct charge was made that if this old man, to state it in his own language, did not come under or within his will, he would send him and his sister to the penitentiary for life. * * If you find in this case that, in connection with that statement, with that threat, he had been directing his attention to the fact that he had sworn falsely, or sworn in conflict with other witnesses, you have a right to determine whether it was a threat that he would send him to the penitentiary for life for such discrepancies in his testimony, or not."

We think this charge fully justified by the record in the case.

6. Complaint is made of the admission of testimony relative to the subsequent arrest of the prosecuting witness at the instance of respondent, and to the attempt subsequently to procure the execution of the deed by Lucas. We think this testimony was admissible as bearing upon the respondent's intent.

A careful examination of the record convinces us that there. was no legal error committed on the trial.

The conviction will be affirmed, and the case remanded for further proceedings.

McGRATH, C. J., LONG and HOOKER, JJ., concurred. GRANT, J., did not sit.