CASE 48.—PROSECUTION AGAINST LUCY PATRICK FOR EXHIBITING AND CIRCULATING A THREATENING LETTER.—December 6.

## Commonwealth v. Patrick

Appeal from Magoffin Circuit Court.

D. W. GARDNER, Circuit Judge.

From an order overruling a demurrer to the indictment the Commonwealth appeals. Indictment held not to state an offense—Opinion certified.

1. Threats—Statutes—Construction.—Ky. Stats., 1903 section 1222, provides that if any person shall knowingly send any letter, with or without a name signed thereto, or with a fictitious name, threatening to kill another, or to do him or his wife or child harm, or burn or destroy his house or other property, or to accuse him or his wife or child of a felony, with the intention to extort or gain money, goods, wares, merchandise, or a deed, will, or other instrument of writing, from the person so threatened, or from any other, he shall be confined, etc. · Held, That the sending of a threatening letter by one woman to another for the purpose of blackmail was not an offense under such section; it being an essential ingredient of the crime thereunder that there be threats to do harm to a person, or to destroy his property, or charge him or his wife or child with a felony, as well as to extort money, etc.

2. Same—Act March 17, 1902 (Laws 1902, p. 55, ch. 25), which was an enlargement of Kuklux Act April 11, 1873 (Pub. Laws

1873, p. 35, ch. 767), which was entitled "An act to prevent lynching and injury to and destruction of real property" by "riotous assemblages, * * * and to prevent the posting and circulation of threatening letters," etc. The first section prohibits persons banding together to injure or disturb another, the second is against banding together to injure or destroy property, and the ninth, which is Ky. Stats., 1903, section 1241a, subsection 6, provides that if any person shall send, circulate, or exhibit any threatening notice or letter, signed with such person's name, or anonymously, he shall, on conviction, be fined, etc. Held, That, as the purpose of such act was to prevent kukluxing, a prosecution for sending or circulating a threatening letter thereunder could not be sustained, unless there was, in addition, a banding of persons to intimidate, alarm, disturb, or injure another, etc., so that the sending of an intimidating letter by one woman to another to blackmail was not an offense thereunder.

3. Same—Indictment.—An indictment for sending a threatening letter in alleged violation of Ky. Stats., 1903, section 1241a, subsection 6, providing that if any person shall send, circulate, etc., a. threatening letter, signed by himself or another's name or anonymously, he shall be punished ( etc., in the language of the statute, was fatally defective for failing to set out the letter in substance.

4. Same—Nature of Offense.—Defendant wrote a letter to her suspected rival in her husband's affections, charging the addressee with having received money and property from the husband, and, demanding that it be returned, or the addressee's conduct would be exposed. Held, That the sending of such letter was not an indictable offense.

N. B. HAYS, Attorney General, C. H. MORRIS and A. F. BYRD for Commonwealth.

J. J. C. BACH for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR— Affirming.

Appellee was indicted by the grand jury of Magoffin county, charged with exhibiting and circulating a threatening letter. The indictment runs in this language: "The grand jury of Magoffin county in the

name and by the authority of the Commonwealth of Kentucky accuse Lucy Patrick of the offense of circulating and exhibiting a threatening letter, committed in the manner and form as follows, to-wit: The said defendant on the 4th day of February, 1907, in the county and circuit aforesaid, did unlawfully send, exhibit, and circulate a threatening letter addressed to Maud Dixon for the purpose of intimidating and extorting money and property from the said Dixon, against the peace and dignity of the Commonwealth.'' A demurrer to the indictment was sustained. That action presents the first question for consideration.

It is not made clear to us under what statute the indictment was intended to be framed. There are two statutes in force in this State, to which the act charged might have been referable, had facts been sufficiently stated. One is section 1222, Ky. Stats., 1903, which reads: ''If any person shall knowingly send any letter, with or without a name signed thereto, or with a fictitious name, threatening to kill another, or to do him or his wife and child harm, or to burn or to destroy his house or other property, or to accuse him or his wife or child of a felony, with the intention to extort or gain money, goods, wares or merchandise, or a deed, will or other instruments of writing from the person so threatened, or from any other, he shall be confined in the penitentiary not less than one nor more than five years.'' The other is subsection 6, section 1241a, Ky. Stats., 1903, which subsection is in these words: ''If any person shall send, circulate, exhibit or put up any threatening notice or letter, signed with such person's own or another's name 'or anonymously' he shall, upon conviction thereof, be fined not less than one hundred dollars,

nor more than five hundred dollars, and imprisoned in the county jail not less than three nor more than twelve months." The circuit court and the prosecution treated the latter section as applying.

That the former did not apply to the state of facts developed, nor to those averred in the indictment, is certain. By that section it is an essential ingredient of the crime denounced by it that there must be in the letter a threat to do harm to a person, or to destroy his property, or to charge him or his wife or child with a felony, as well as that the person indicted shall have had the purpose to extort money or property, or the execution of a deed, or will, or other writing from the person threatened. But under the latter section such ingredients do not expressly appear to be necessary in order that the statutory offense may be committed. Appellee argues that the two sections should be read together as being parts of the same statute, and as grades or degrees of the same criminal act. But upon a study of the statutes, and of their history, we find they are not at all related. The former statute is brought over into the present revision from the General Statutes, and was formerly section 3 of article 6 of chapter 29 of that compilation. Subsection 6 of section 1241a is part of the act of March 17, 1902, (Laws 1902, p. 59, c. 25, section 6), which was in turn an amendment to the act of 1897 (Laws 1897, p. 32, c. 20, section 9), the latter brought about by the era of tollgate raiding, and was an enlargement upon the old Kuklux act of April 11, 1873, (Pub. Acts 1873, p. 35, c. 767). Buchannon v. Commonwealth, 95 Ky. 334, 15 Ky. Law Rep. 738, 25 S. W. 265; chapter 29, art. 36, subdiv. 7, section 1, Gen. Stats.

The act of March 17, 1902, was enacted under this title: "An act to amend and re-enact an act entitled

'An act to prevent lynching and injury to and destruction of real property in this Commonwealth at the hands of mobs, or other riotous assemblages of persons, and to prevent the posting and circulation of threatening letters, and to prescribe penalties for the enforcement of its provisions,' same being chapter twenty of the acts of eighteen hundred and ninety-seven, and which was approved by the Governor May 20th, 1897." This act came up for construction in Weber v. Commonwealth, 72 S. W. 30, 24 Ky. Law Rep. 1726. The objection urged against the act at that time was that it violated section 51 of the Constitution, which requires each legislative act to relate to but one subject, and that subject to be expressed in the title. Responding to the attack upon the act upon that ground, this court said: "The act is in 11 sections, and all its provisions are germane to the subject expressed in the title. The general subject of the act is the better preservation of the public peace and the suppression of mobs ·and other unlawful confederations. The whole of the act relates to this subject. While the title of the act might have been more concisely expressed, it seems to us to state the subject of legislation with sufficient clearness to indicate to a person of ordinary intelligence what was meant. It is true the first section of the act provides against persons banding themselves together for the purpsoe of injuring or disturbing another; the second, against those banding themselves together for the purpose of injuring or destroying property; the ninth, against those who sent our or put up a threatening notice or letter. But all these things have a natural connection, and fall under the general subject which the Legislature had in mind. * * * The sending of threatening letters has a natural con-

nection with the subject of the act, because such letters and notices are means commonly employed to terrify and annoy citizens by the lawless persons aimed at in the other sections of the act.''

It is true that in that case there was not involved a prosecution under section 9 of the act, which is subsection 6 above quoted. But the prosecution was under the first section against persons banding together to terrorize others. If the act was bad, in that it was in violation of section 51 of the Constitution, it was permissible to show it by a course of reasoning to establish its multifariousness both in title and context; for, if the constitutional provision was violated with respect to the title embracing more than one subject, the act fell, and no prosecution could be maintained under it, and, if the act was bad at all, the vice was present both in its title and in its body. The court sustained the act upon the ground that it embraced but one subject. It is permissible that various features of the single subject may be legislated upon in an act, so long as they are cognate and logically pertain to the subject. The act was not dual in subject. Its end was to prevent what was formerly known as ''Kukluxing.'' Various features of that subject were treated of in the act. One of them was the familiar practice of posting or sending threatening letters by members of the confederacy. To sustain a prosecution for sending or circulating such letters, they must pertain to one of the other acts which are denounced by the statute, viz., the banding together of persons for the purpose of intimidating, alarming, disturbing, or injuring any person, or to rescue a prisoner charged with a public offense, or to prevent the lawful prosecution of such prisoner, or an unlawful confederation for the purpose of in-

juring property of another; and unless the threatening letter has reference to or bears upon such unlawful banding or confederation for one of the purposes denounced by the statute, it does not fall under subsection 6 of section 1241a, supra. The averment of the indictment failing to disclose such connection of the letter, the indictment was not good.

The indictment is, furthermore, insufficient in form. While generally a statutory offense may be stated in the exact language of the statute, it is not always so. The indictment must be sufficiently explicit, so as to put the accused upon his defense as to the particular act which he is called upon to defend. The letter, or its substance, should have been set out in the indictment, so that the defendant might have prepared herself to meet the exact accusation at her trial. The letter produced at the trial is an emanation from a jealous woman to her suspected rival in her husband's affections. It charged the person addressed with having received money and property from the hands of the husband of the accuser, and demanded that they be returned, or she should be exposed. The threat is in this language: "You had better be sure and send everything. If you don't, there is going to be a racket, and a big one too. I guess you would hate for me to tell Dr. and your mother the way you did while you staid in the store and about those letters"—and "I mean to tell everybody about you, everything I know." Sending such a letter, though without truth to support it, and offensive as it may be to good taste, or even decency, is not an indictable offense under the laws of this State.

This opinion is ordered to be certified to the circuit court.