(139 App. Div. 595.)

## PEOPLE v. ADROGNA.

(Supreme Court, Appellate Division, First Department. July 7, 1910.)

1. THREATS (§ 3*)—PERSONS LIABLE.

In a prosecution under an indictment charging extortion by means of threats, accused could be convicted, not only if he wrote the threatening letters himself, but also if he acted in conjunction with those who did write them.

[Ed. Note.—For other cases, see Threats, Cent. Dig. § 8; Dec. Dig. § 3.*]

2. CRIMINAL LAW (§ 1056*)—APPEAL—REVIEW.

Any error in refusing a charge will not be considered, where no exception was taken.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2668-2670; Dec. Dig. § 1056.*]

3. THREATS (§ 7*)—EVIDENCE—SUFFICIENCY.

In a prosecution for extortion by means of threats, evidence held to sustain a conviction.

[Ed. Note.—For other cases, see Threats, Dec. Dig. § 7.*]

4. THREATS (§ 7*)—EVIDENCE—SUFFICIENCY.

In a prosecution for extortion by means of threats, proof to exclude any possible inference of innocence is not required, but only such that the inference of guilt is the only one that can be reasonably drawn from it.

[Ed. Note.—For other cases, see Threats, Dec. Dig. § 7.*]

Appeal from Court of General Sessions, New York County.

Giuseppe Adrogna was convicted of the crime of extortion, and he appeals. Affirmed.

See, also, 118 N. Y. Supp. 1129, 1132.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, LAUGHLIN, and DOWLING, JJ.

John Palmieri, for appellant.
Robert S. Johnstone, for the People.

McLAUGHLIN, J. The defendant appeals from a judgment convicting him of the crime of extortion. The indictment charged, in substance, that on the 1st of November, 1908, he feloniously obtained the sum of $75 from one Scarito, by means of letters threatening to kill him unless the money were paid. The principal question presented on the appeal is whether the evidence is sufficient to sustain the conviction of the crime charged.

At the trial it appeared that in the month of October, 1908, Scarito received several threatening letters, three of which were introduced in evidence, demanding various sums of money and containing threats that he would be killed and his property destroyed if he did not comply with the demands made. All of the letters were written in Italian and signed "Black Hand." After receiving the first two or three letters, Scarito consulted the defendant concerning them, and the latter agreed to find out who the writer or writers of the letters were. Shortly thereafter he informed Scarito that he had obtained the desired information, and after a number of interviews, in which the defendant urged Scarito to comply with the demands, other letters

of similar purpose having been received by him in the meantime, it was finally agreed Scarito should pay $75 to settle the matter. This amount he paid to the defendant, according to the testimony of Scarito and his son, on the 1st of November, 1908, and on the following day Scarito received a letter acknowledging its receipt and demanding that he should deliver all prior letters received by him on the subject "to the person who is in charge of this—to the person that you are trusting." He then had another conversation with the defendant, who asked him if he had received the letter acknowledging the receipt of the $75 and demanding the return of the letters, in response to which Scarito said he had, but had burned all of them.

There is no direct evidence that the defendant wrote the letters, or any of them, and for this reason it is urged that the defendant could not be convicted under the indictment charging extortion by means of threats that the defendant would kill Scarito. But he could be convicted under the indictment, not only if he wrote the letters himself, but also if he acted in conjunction with those who did write them. People v. Bliven, 112 N. Y. 79, 19 N. E. 638, 8 Am. St. Rep. 701; People v. McKane, 143 N. Y. 455, 38 N. E. 950; People v. Giro, 197 N. Y. 152, 90 N. E. 432. For this reason the court did not err in refusing to charge that before the defendant could be convicted the jury must find that the money was secured through fear "induced by a threat made by the defendant that he, the defendant, would kill the complaining witness." The other refusal to charge, which it is claimed constituted error, was not excepted to.

It is true that the evidence connecting the defendant with the letters is somewhat unsatisfactory; but, when all of it is considered, it is quite sufficient to sustain the finding of the jury. Scarito testified that the defendant persistently refused to tell him the name or names of the writers of the letters, and, when he asked him to do so, would answer, "You have to deal with me and nobody else," and after the letter was received acknowledging the receipt of the $75 paid, and demanding return of the letters, defendant said to Scarito, "Give me back my letters, or the letters which you have received," and "return the letters according to the instructions in that letter and in that receipt."

After a careful consideration, of all the evidence offered at the trial, it seems to me only one conclusion can reasonably be drawn from the same, and that is that the defendant either wrote the letters himself, or else he aided and abetted the person or persons who did write them, and if he did either he was guilty of the crime charged in the indictment. The question of his guilt was fairly submitted to the jury; the court charging that if they had a reasonable doubt upon the subject defendant must be acquitted. Proof to exclude any possible inference of innocence is not required (People v. Bonifacio, 190 N. Y. 150, 82 N. E. 1098), but simply such that the inference of guilt is the only one that can be reasonably drawn from it. The defendant had a fair trial, the evidence amply sustains the verdict, and no errors were committed which would justify a reversal of the judgment.

The judgment of conviction is therefore affirmed. All concur.