PEOPLE v. CAMPISI.

(Supreme Court, Appellate Division, First Department. June 2, 1911.)

1. THREATS (§ 3*)—PERSONS LIABLE.

Under an indictment charging extortion by means of threatening letters, defendant may be convicted, not only for sending the letters, though he did not write them, but also for acting in conjunction with those who did write them.

[Ed. Note.—For other cases, see Threats, Cent. Dig. § 8; Dec. Dig. § 3.*]

2. CRIMINAL LAW (§ 814*)—TRIAL—INSTRUCTIONS—APPLICATION TO CASE.

Requested instructions in a prosecution for extortion by means of threatening letters, which disregard the question of whether defendant was liable for the sending of the letters, and proceed upon the theory that there could be no conviction if any part of the money had been paid to defendant before his threat to kill the family of the person paying the money, made simultaneously with the payment of the money, are properly refused as having no application to the case.

' [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1979; Dec. Dig. § 814.*]

3. THREATS (§ 7*)—EVIDENCE—MATERIALITY.

In a prosecution for extortion by means of threatening letters, the exclusion of an alleged agreement in writing by defendant to purchase an interest in a barber shop is proper, being entirely immaterial to any issue in the case.

[Ed. Note.—For other cases, see Threats, Dec. Dig. § 7.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. THREATS (§ 7*)—TRIAL—SUFFICIENCY OF EVIDENCE.
    Evidence in a prosecution for extortion by means of threatening letters
    *held* to sustain a conviction.
    [Ed. Note.—For other cases, see Threats, Dec. Dig. § 7.*]

Appeal from Trial Term, New York County.

Isidoro Campisi was convicted of the. crime of extortion, and he appeals. Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

John Palmieri, for appellant.

Robert S. Johnstone, for the People.

DOWLING, J.   The indictment charged, in substance, that on November 28, 1908, in the city of New York, the defendant feloniously obtained from Guiseppe Randazzo the sum of $350 by the wrongful use of fear that ih case the said sum was not paid Salvator Randazzo, the son of Guiseppe, would be killed.

It appears that Randazzo was living with his son at 36 First avenue, in this city, in the month of October, 1908, when the boy asked for a penny to go out and get some candy, and, having gone, did not return.   Some time thereafter he began to receive letters containing threats that, if he did not pay money for the return of his son, the latter would be killed, "and the body thrown into a box behind his door."   Having shown some of the letters to one Adrogna, the latter advised him to speak to his brother-in-law, meaning defendant.   This advice he followed, and asked defendant to go around and look for the child, in response to which the latter said that he knew nothing about it.   About November 14th, Randazzo delivered four of the letters received by him to the defendant, at the latter's request that he might read them, but he never returned them, and, when questioned concerning them, replied that he had burned them up.   Thereafter defendant told Randazzo that, if he would give him $350, he would get his son back, as defendant had found out where the boy was. Randazzo had only $200, which was in his wife's possession, but said, if defendant would give him time, he would borrow the money, which he did, obtaining the balance of $150 from another brother-in-law, Scarito.   Thereafter, on November 27th, the sum of $350 was paid over to defendant by Randazzo, and while the money was being counted out to him, or while it was still in defendant's hands, and before he had put it into his pocket, he told Randazzo that, "if he told any one that he had given defendant the money, they would kill all his family." Defendant at that time promised that Randazzo's son would be home the following night.   On the following evening, November 28th, at 8:30 p. m., the boy was found wandering alone on the street at the corner of King and Macdougal streets, about two miles from his home, to which he was restored on the following morning, after he had been taken by the citizens who found him to the police station. Thereafter the defendant called at Randazzo's house, but made no inquiry as to how the boy had been found nor when he had returned.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The foregoing facts could all have been found by the jury to have been properly proven, established as they were by the testimony of Randazzo, his wife, Scarito, and Gonsaph. They disclose the situation which has now become familiar of the kidnapping of the child, the sending of threatening letters to the parents demanding money or as an alternative the death of the child, the appearance of a person, following the receipt of the letters, who claims to know the child's whereabouts, and, if the money is paid over, the return of the child. In this case there is the significant fact in no way sought to be explained, that the child made his appearance upon the street at the time fixed by defendant for his return to the father. Defendant denied all the testimony tending to connect him with the detention or return of the child, and attributed his prosecution to his failure to pay money to Randazzo upon demand. He claims never to have seen the letters in question, and never to have received any money from Randazzo. Corroboration of his testimony was sought in that of his wife and brother, and two witnesses vouched for his good character.

[1] There was a clear and direct issue of fact, which was fairly submitted to the jury. Upon the testimony, they might properly have found either that the threatening letters had been sent under the direction of defendant, if he did not write them, or that he was acting in conjunction with those who did write them. In either event, he would have been guilty of extortion. People v. Adrogna, 139 App. Div. 595, 124 N. Y. Supp. 68.

[2, 3] The only exceptions are those which have to do with the refusal upon the part of the court to charge certain requests of the defendant and with the exclusion of an alleged agreement in writing by defendant to purchase a one-half interest in a barber shop at 36 First avenue. As to the requests to charge, they disregard entirely the question of whether or not the defendant was liable for the sending of the letters in question and proceed upon the theory that, if any part of the money had been paid to defendant before the threat to kill Randazzo's family was made, even though the balance of the money was still being paid over, as the threat was simultaneous with the payment of the money, there could be no conviction. In view of the facts in this case, such requests were not proper, and had no application thereto. The agreement to purchase was entirely immaterial and had no relevancy to any issue in the case, and the defendant had been allowed, without objection, to testify regarding the alleged purchase of this interest in the barber shop, which could not have assisted the jury in reaching a conclusion upon the merits.

[4] The defendant had a fair trial; and while some of the evidence of the witnesses for the prosecution was, as to some minor points, vague and contradictory, that was doubtless due to the fact that their testimony was given through an interpreter and their lack of education led them into apparent discrepancies; but, the main facts having once been resolved by the jury to be as testified to by the witnesses for the prosecution, they could have led to no other reasonable inferences save that of defendant's guilt.

The judgment of conviction is therefore affirmed. All concur.