CITY MAGISTRATES' COURT—SECOND DISTRICT—NEW YORK CITY,

March 4, 1914.

# THE PEOPLE ex rel. ADAM LESNIAK v. WALTER MIKULSKI.

(1) PENAL LAW, SEC. 551—SENDING THREATENING LETTERS.

Sec. 551 Penal Law prohibits any person from making or knowingly delivering written threats to do an unlawful injury to another or by a writing wilfully to cause annoyance to another—and it is not necessary that the letters be addressed to the person injured, or received by him.

(2.) SAME—PRIVILEGED COMMUNICATION.

Where anonymous letters were sent to the Mayor and Police Commissioner charging a violation the liquor tax law, gambling, etc., by complainant, such letters if proven to be written by defendant were privileged communications if made in good faith, with honest motives and for justifiable ends and in a proper manner.

*Louis Bleier,* Deputy Asst. Dist. Atty., for people.

*John A. O'Rourke* for defendant.

FRESCHI, City Magistrate.

The prosecution here charges a violation of section 551 of the Penal Law, which makes it a misdemeanor to send threatening or annoying letters under circumstances and in a manner not amounting to blackmail. The exact language of the statute under consideration is as follows: "A person who, knowing the contents thereof, sends, delivers, or in any manner causes to be sent or received any letter or other writing threatening to do any unlawful injury to the person or property of another, or any person who shall knowingly send or deliver or

shall make and for the purpose of being delivered or sent, shall part with the possession of any letter, postal card or writing with or without a name subscribed thereto or signed with a fictitious name or any letter, mark or other designation, with intent thereby to cause annoyance to any person, is guilty of a misdemeanor."

The principal witness for the People conducts a pool room and a saloon regularly licensed for the retail traffic of liquor at the premises No. 523 Sixth Avenue, in the City and County of New York. During the year 1913, it seems that the defendant complained in writing, concerning alleged unlawful acts committed by the complainant, at his place of business. All these letters were anonymous; and, in my opinion, were written by the defendant and by him addressed, sealed and sent to the Mayor and the Police Commissioner. These communications charged, in substance, violations of the Liquor Tax Law, gambling and other unlawful acts on the premises. Without setting forth verbatim the subject matter of these letters, a mere summary of them suffices to a discussion of the law points in the case. The first letter, dated March 11th, 1913, states that "all kinds of games of chance" are permitted and "that the place is open at all hours of the night and fighting is a daily occurrence." The next letter bears date September 8th, 1913, and repeats the gambling charge and that the place is a "hang-out for persons of bad repute." The third letter of September 26th, 1913, is practically to the same effect and the letter to the Mayor, dated October 29th, 1913, says that the place runs as a "pool-room without a license."

The defence claims that no crime has been committed and moves at the close of the People's case for a dismissal of the complaint and for the discharge of the defendant on this ground.

This section in its present amended form has not been construed by the courts, so far as my research has gone, except in one instance by Mr. Justice Mayor in the People v. Loveless, 84 N. Y. Supp. 1114. That case, however, is not analogous to the facts in the case under consideration. In the Loveless case, the defendant addressed a letter that was the basis of the charge there, directly to the complainant, demanding payment of an account held for collection, and stating that if it was not paid without its being placed in the hands of an attorney, various members of an association of which he was a member would be notified that the claim against him had been unpaid and placed in the hands of an attorney for collection, which communication evidently had no other purpose than to annoy and substantially embarrass the complainant by affecting his credit and to compel the payment by him of a disputed claim.

Two points are urged by defendant's counsel. He contends, first, that because the letters in question were not addressed to the complainant and received by him, the statute does not apply; and secondly, that assuming the disputed letters to have been written by the defendant, they are prima facie privileged communications.

As to the first contention I must hold against the defendant. It is perfectly clear that the legislative intent, as expressed in the penal law (*supra*), is to prohibit any person from making or knowingly delivering written threats to do an unlawful injury to person or property, or, by a writing, wilfully to cause annoyance to another. Obviously, the plain object of the law is to safeguard the person and to preserve and secure property rights inviolate and to guard against injury and annoyance.

Although there is no threat involved here, the same principle applies to this class of cases which comes under the second

sub-division of the statute, that is, the amendment (Chap. 120, p. 288, Laws, 1891) of the above-stated penal law, which deals with letters of an annoying nature.

Nothing in the letter or the spirit of this law, I think, makes it necessary as a condition precedent to a conviction to prove that the author of the writing addressed, or its messenger, with knowledge of its nature, delivered the communication directly to the person to be affected by it. I take it that if a threatening or annoying letter is meant for him and it ultimately reaches the person to be threatened or annoyed, even though the writing be addressed or delivered to another, the crime is committed provided that the author or mesenger, or both, intend that the subject-matter should reach the person for whom it is intended, directly or indirectly; but it must be so made and under such circumstances as to operate, to some extent at least, on the mind of the one whom it is expected to influence. (State v. Brownlee, 84 Iowa, 473.) Like a threat so the annoyance must come from the author or his messenger with guilty knowledge; but the proof is not necessary to show that the threat was against the person to whom the letter was directed. The offense may be committed by sending a letter conveying a threat of some other person, provided it is sent for the unlawful purpose mentioned. (People v. Braman, 30 Mich. 460).

The English and American Encyclopedia of Law (vol. 28, p. 145, 2nd Ed.) states it as a rule that the communication whether oral, written, or printed, must be intended for the person threatened and must actually come to his knowledge, even though the statute does not in terms say so.

The Brownlee case (*supra*) presented a charge against the defendant therein, with having unlawfully threatened to kill another in order to procure his signature to a promissory note, seeking thereby to obtain remuneration in that way for a

grievance of a financial nature and to that end communicated his plans to an accomplice, who, in turn, told the complainant of them. The Court said (p. 477), in writing for a reversal of the conviction for extortion: " It is clear that in this case the threats were not made to or in the presence of Wright, (complainant) and it is certain it was understood that they should not be communicated to him, and that the defendant, until after his arrest, had no knowledge that they had been so communicated."

I would infer from all the circumstances of the case at bar, that the defendant understood that the contents of his letters should not be communicated to, nor were they intended for, the complainant; and it seems to be the fact that the complainant had no knowledge that these matters had been stated about him until after his own waiter's arrest for a violation of the liquor tax law, in selling whiskey on Sunday, November 9th, 1913, for which he has been held for trial in the Court of Special Sessions. And in this connection it may be stated as a significant fact that it appears from the Police report that a license for complainant's pool-room was not procured until October 30th, 1913, the day following defendant's last letter.

How the complainant procured the original letters from the authorities has not been shown by competent evidence, and this phase of the case is left entirely to conjecture. Attached to the deposition before me are the anonymous letters, report of the Police Department, affidavit of a handwriting expert, reports of police officials, and the correspondence between the Mayor and the Police Commissioner, all being the original records of the Police Department in this case.

There is no express evidence that the letters were ever sent or shown, or their contents, in any other manner made known to the complainant at the request of, or with the knowledge and consent of the defendant. From the standpoint of the defend-

ant, it is improbable that the letters were ever intended for the perusal of the complainant; and surely the police were not required to make known to him the source of their information that led to action on their part. It is against public policy for police officials to disclose their source of information. Aside from any legal obligation, there is certainly a moral obligation to keep all such communications secret. I question the right of the officials to divulge them to others. (See Shinglemeyer v. Wright, 124 Mich. 230).

The New York Police are empowered to enter and inspect to a reasonable extent all places of business having excise or other licenses to carry on business, all houses of ill-fame or prostitution, and all gambling houses. (Greater New York Charter, sec. 315).

It is fair to assume from the record here that the defendant intended that the officers charged with the duty to suppress crime should make an investigation on police lines with the least possible publicity and annoyance to the person accused, in the matter of the charges, and then take only such police action as was warranted by the evidence that developed. The defendant, I am satisfied, acted " upon a proper occasion, for a proper motive, in a proper manner, and upon reasonable and probable cause."

True it is that annoyance may result, no doubt, from the means employed by the city officials, and not from the written complaint itself. But is such " annoyance " within the contemplation of this law?

A broad construction of the statute in question might, however, include every form of writing which may, in the relation of things under the rule of cause and effect, actually annoy any person, whether he be the person addressed or intended. Such a rule of law could be carried to extremes and work considerable injustice.

The writing must be calculated to cause real annoyance and disturbance in the mind of the person affected, and not merely a whimsical or capricious annoyance. Trivial annoyance and idle threats are outside the pale of the law. Serious and malicious cases come within its inhibition. If the operation of the mind of such person were the sole test, then, I fear, that almost any letter might be held to cause annoyance. While no precise words are required to convey a threat or cause annoyance, still the inhibition deals with such case only as have a substantial basis for the fear or annoyance caused another.

To hold that the Legislature intended by the use of the words " cause annoyance " that any person would be prevented from complaining of the commission of a crime, or the suspicion of a crime, would be to defeat the very purpose of this law, which is to prevent groundless and vicious annoyance. Every person has a right to make a complaint to the authorities, if made bona fide, and with the purpose of aiding in the detection and prosecution of offenses against the law (Pierce v. Oard, 23 Neb. 833; Eames v. Whittaker, 123 Mass. 342; Garn v. Lockhard, 108 Mich. 196) ; and such complaints may cause annoyance, at times, more particularly when they result in an arrest and conviction. Annoyance of that kind is not within the purview of this statute.

The defendant is entitled to a strict construction, which in my judgment, limits the effect of this law to the cases that I have above indicated.

As to the second contention, I hold that the communications are privileged.

If a crime or supposed crime has been committed, and a person interested in the general welfare and concerned in the maintenance of law and good order, and charged with a duty to uphold them furnishes the authorities upon whom rests the duty to administer the law with information concerning it,

and the communication is made in good faith, with honest motives and for justifiable ends, and in a proper manner, there arises at once that question of qualified privileges which is one of law for the court; and if the party seeking to hold the defendant liable criminally, charges that he acted with actual malice, the burden of proving it rests upon the party seeking to hold the accused, and if such evidence is adduced, the questions of malice, good faith, etc., are questions of fact to be submitted to a trial court or the jury, although it contained defamatory matter, which without such privilege, would be actionable and slanderous. (Cooley on Torts, vol. 1, p. 436, 3rd ed.; Byam v. Collins, 111 N. Y. 143, 150; Coloney v. Farrow, 5 App. Div. 607, 608; Decker v. Gaylord, 35 Hun, 584; Dale v. Harris, 109 Mass. 193; Hamilton v. Eno, 81 N. Y. 116; Mattice v. Wilcox, 147 N. Y. 624; Klinck v. Colby, 46 N. Y. 427; Sickles v. Kling, 60 App. Div. 515; Lovell Co. v. Houghton, 116 N. Y. 520; Payne v. Rouss, 46 App. Div. 315; Annotated Penal Law, sec. 1350, and cases there cited.)

The whole case resolves itself into one of intent. This statutory offense must have the necessary ingredient of intent to cause annoyance that seems to be lacking here. I appreciate that letters, charging the commission of unlawful acts without any justification therefor, may be sent to the police authorities with the deliberate design of annoying a business rival, for instance; nevertheless, in such cases, it becomes a question of law and fact on the evidence as to whether such was the real purpose of the writer in respect to the person to be affected.

The statute requires proof of the existence of intent. While the acts charged must be accompanied by a criminal intent, which may be inferred from all the circumstances of the case (Gardner v. People, 62 N. Y. 299), the law will only presume

an unlawful intent from the intentional commission of an act in itself unlawful (People v. Herrick, 13 Wend. 87).

This case presents no suggestion or innuendo from anything written or spoken, or from the relations of the parties themselves, indicating rivalry or animus by the defendant to injure or annoy the complainant.

It is not a reasonable inference that the defendant had any unlawful design or motive, or that he acted arbitrarily. The presumption of good faith which privilege supplies repels the idea of malice. The police was entitled to the information and it is quite clear that the defendant did not make the statements for repetition; but, on the other hand, made them for the exclusive use of the authorities. One of the charges culminated in a criminal prosecution against the complainant's employee.

The offense is in my judgment incomplete and the prosecution has failed to sustain the burden of proof. The complaint is dismissed and the defendant is ordered discharged.

---

## NOTE ON THREATENING LETTERS.

**GENERALLY.**

The crime is defined as the sending of letters containing threats of the kinds recognized by the statutes as criminal. Black's Law Dictionary, p. 1171.

A letter by a wife to an alleged paramour of her husband, held not to be such a threatening letter. Com. v. Patrick, 127 Ky. 473.

The letter in question need not be signed. People v. Cadman, 57 Cal. 572.

It may contain threats either of the sender or of some other person, or persons. State v. Compton, 77 Wis. 460.

One may be convicted of the offense not only if he himself wrote the threatening letter, but also if he acted in conjunction with another who did write it. People v. Adrogna, 139 App. Div. 595, 25 N. Y. Crim. 37.

The threat may be to accuse the recipient of the commission of a crime. People v. Wightman, 104 N. Y. 598, 5 N. Y. Crim. 545 (affirming 43 Hun, 358) ; People v. Thompson, 97 N. Y. 313, 2 N. Y. Crim. 523.

The privilege of an attorney does not constitute a defense to his prosecution for threats of a perjury charge. People v. Wickes, 112 N. Y. App. Div. 39, 20 N. Y. Crim. 9.

The letter may contain threats to impute disgrace. People v. Tonielli, 81 Cal. 275.

Or to cause annoyance. People v. Loveless, 84 Suppl. 1114.

Or to do an injury to the person or property of another. People v. Cadman, 57 Cal. 562.

To send a threatening letter to another for the purpose of extorting money from him, and menacing him with personal violence or injury in case of his refusal to comply with the demand, of such a character as would be calculated to induce a firm and prudent man to part with his money and submit to it, is an indictable offense at common law. State v. Evans, Houst. Crim. Cases (del.) 97.

To constitute a threatening letter under the statutes, the letter in question may be written for the purpose of obtaining that which in justice and equity the writer of the letter is not entitled to receive. . Brabham v. State, 18 Ohio State, 485.

Defendant will not be excused because he used no set form or phrase of speech. Glover v. People, 204 Ill. 170.

If in fact it can be found that the purport and natural effect of the words used is to convey a threat, the mere form of words is unimportant. People v. Thompson, 97 N. Y. 313, 2 N. Y. Crim. 523.

A mere asking of a charity is not a demand within the act, but it must

be accompanied by some express or implied threat; a requisition which may operate as a force on the mind of the person to whom it is addressed. Robinson's Case, East. C. P. 1110.

## INDICTMENT.

For form of indictment see Dunn v. State, 43 Tex. Crim. 25, 32.

Amendment of the indictment, at the close of the evidence for the state, to conform to the proof, by changing the date of the threats on which the indictment is based and the business of the person threatened, is justified, the indictment not being changed in substance, and defendant not being prejudiced thereby.

The indictment need not charge the crime in the words of the statute if words of similar import are used. Hewitt v. Newburge, 141 N. Y. 538.

It need not be alleged that the party against whom the threat was made was innocent of the crime or immorality of which the threat was made. People v. Wightman, 104 N. Y. 598, 5 N. Y. Crim. 545.

In some jurisdictions an indictment for sending a threatening letter must set out the letter *in haec verba*. Tynes v. State, 17 Tex. App. 123.

While in other jurisdictions a failure to do so is not a fatal defect. Johnson v. State, 152 Ala. 46; State v. Stewart, 90 Mo. 507.

An innuendo averment is unnecessary where the threat conveyed is plainly indicated. Dunn v. State, 43 Tex. Crim. 25.

An innuendo, however, which materially enlarges the sense of the words written, is bad, as where the threat was, " dam you, if this don't led will," the innuendo being that the meaning was " damn you, if this don't move you, lead will." Atchley v. State, 56 Tex. Crim. 569.

## VARIANCES.

If the indictment does not purport to set out the exact words in which the threat was expressed and the proof is substantially the same as the allegations there is no variance. Com. v. Bacon, 135 Mass. 521.

That the letter put in evidence in a prosecution for attempt to extort money from another by threat to injure his property, stated that the money must be put in a certain place " unbenonce " to anyone but the person threatened, while the letter as copied in the indictment stated,

that it must be put there "unbinond" to anyone, was not a fatal variance.  Toomer v. State, 112 Md. 285.

But the variance is fatal where extortion by threats of criminal prosecution before a certain justice is alleged, and threats to prosecute before another justice are proved.  Strange v. State, 33 Tex. Crim. 315.

### EVIDENCE.

On the question of intent, evidence of the relation of the parties is admissible.  People v. Gardner, 144 N. Y. 119, 9 N. Y. Crim. 404; modifying and affirming 73 Hun, 66, 9 N. Y. Crim. 124.

Evidence is admissible that the defendant had procured the arrest of the complainant.  People v. Whittemore, 102 Mich. 519.

Evidence of the truth of the charge made is admissible.  Com. v. Jones, 121 Mass. 57.

But where the crime threatened to be charged did not involve any wrong to the defendants, evidence of the truth of the charge is not admissible.  Com. v. Buckley, 148 Mass. 27.

Parol evidence may be introduced to show the meaning of a threatening letter.  People v. Gillian, 50 Hun, 35.

The admission of the people's translation of a newspaper article referred to in the letter was not prejudicial error in a prosecution for an attempt to extort money by means of a threatening letter, as it tended to explain defendant's motive and object, and as he himself introduced the same article translated with but immaterial variance.  People v. Tonielli, 81 Cal. 275.

Proof to exclude any possible inference of innocence is not required, but only such that the inference of guilt is the only one that can be reasonably drawn from it.  People v. Adrogna, 139 App. Div. 595, 25 N. Y. Crim. 37.

Evidence held sufficient to sustain conviction.  People v. Weinsheimer, 190 N. Y. 537; People v. Triscoli, 117 App. Div. 120, 21 N. Y. Crim. 1.

Circumstantial evidence may be sufficient when direct proof of the intent with which the act was committed is not to be had.  State v. Debolt, 104 Iowa, 105.

**TRIAL.**

The question whether the threat was calculated to disturb a man and unsettle his mind is one for the jury. State v. Louanis, 79 Vt. 463.

The question whether the party into whose hands the letter fell was really the one for whom it was intended is one for the jury. Reg. v. Carruthers, 1 Cox C. C. 138.

An instruction that if the jury found the defendant guilty of levying blackmail by threatening the prosecutor with seduction, such alleged seduction might be considered upon the question of punishment, held erroneous. Kistler v. State, 64 Ind. 371.

In a prosecution under California Penal Code section 523, providing for the punishment of one who, for the purpose of extortion, sends a letter " expressing or implying, or adapted to imply, any threat such as is specified in section 519 " when the letter does not on its face express or imply a threat, the question whether it is " adapted to imply any threat " is for the jury, and an instruction which assumes that it is so adapted is erroneous. People v. Choynski, 95 Cal. 640.

The failure of the court by proper instruction to limit the evidence tending to show defendant guilty of another crime is not error in the absence of a request therefor. Glover v. People, 204 Ill. 170.

A refusal to instruct the jury in relation to defendant's honesty of belief cannot be objected to where the jury replied to a question from the court that defendant did not so honestly believe. Com. v. Goodwin, 122 Mass. 191.